People of the State of Illinois ex rel. James W. Hollie et al., Appellees, v. Chicago Park District et al., Appellants.

Gen. No. 39,992.

Opinion filed June 29, 1938.   Rehearing denied July 12, 1938.

CHARLES CENTER CASE and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, both of Chicago, for appellants; JOSEPH B. FLEMING, MARTIN G. LOEFF and EDWARD C. CALDWELL, of Chicago, of counsel.

BARASA, RINELLA & BARBERA and MYER N. ROSENGARD, both of Chicago, for appellees; BERNARD P. BARASA, MYER N. ROSENGARD, SAMUEL A. RINELLA, JOSEPH BARBERA and KATHRYN BARASA RINELLA, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from an order of the circuit court entered in a mandamus suit against the Chicago Park District, as successor of the South Park Commissioners, and against various officers and officials of the former. Said order directed that a writ of mandamus issue commanding· defendants to pay a total sum of $520,333.22 to 488 petitioners as due them because of their employment by the South Park Commissioners and withheld from them by an order of said commissioners. The notice of appeal was to operate as a *supersedeas*.

The original petition for mandamus was filed January 29, 1936, by six former police officers and directed against the Chicago Park District, its president, vice-president, secretary and treasurer, and the members of the Civil Service Board of the Chicago Park District.

Thereafter on April 22, 1936, petitioners filed amendments to paragraphs of the petition for mandamus, adding thereto the name of E. N. Heinz, comptroller of the Chicago Park District, as an additional party defendant. Defendants again interposed a motion on May 1, 1936, to strike the petition and the amendments thereto and to dismiss the action.

On August 5, 1936, said petitioners filed an amended petition for mandamus against said defendants and on August 25, 1936, the defendants filed a motion to strike the amended petition and dismiss the action.

On November 30, 1936, a second amended petition for mandamus was directed against the said defendants and three additional defendants were added thereto, namely, Philip S. Graver, James C. Petrillo and Stephen I. Witmanski. This last amended petition and two intervening petitions which were subsequently filed are the basis of the petitioners' case.

The second amended petition alleges that·the office of South Park Commissioners was created by statute

and given power to establish a police force and to employ all persons necessary for the operation of the district; that the said Commissioners by ordinance created a police force and that the petitioners were employed thereunder and were on the force in the years 1932, 1933 and 1934; that under the Civil Service Act of June 10, 1911, there was taken from the South Park Commissioners and vested in the Civil Service Board, all powers in connection with employment, the payment of wages and salaries, appointments, transfers and removals of all employees and that under said act the Civil Service Board was required to prescribe maximum and minimum rates of pay for the various positions; that the offices and places classified by the Board were to constitute a classified civil service and no appointments, promotions, transfers, reductions in grade or pay or removal were to be made except under the act and the rules therein provided for; that under said act the said Civil Service Board was given authority to make rules to carry out the act and was empowered to change such rules.

The said amended petition further alleges that under the act all rules of the Board shall be printed and notice of the places where the rules may be obtained given by publication in a newspaper, such publication to specify the date, not less than 10 days subsequent to the date of publication, when said rules shall go into operation.

It is then averred that under an act of the legislature, petitioners became members of the classified civil service; that the Board promulgated rules classifying positions and that petitioners respectively fell within either the class known as patrolmen receiving a minimum salary of $165.83 per month and maximum of $208.33 per month, or the class known as sergeant of police receiving a minimum salary of $220.83 per month and a maximum of $241.66 per month; that in 1932,

1933, and 1934, petitioner Hollie, as sergeant of police, received $241.65 per month and the other petitioners, as patrolmen, received $208.33 per month; that each petitioner was entitled to the maximum pay for his title and grade.

Continuing, the petition alleges that by the ordinances of the South Park Commissioners of April 17 and May 15, 1912, patrolmen were to receive the minimum pay for the first year, the average between the minimum and maximum for the second year and the maximum for the third year; that sergeants of police were to receive the minimum for the first six months, the average between the minimum and maximum for the second six months, and the maximum the second year.

The petitioners further charge that the ordinance of January 5, 1932, of the South Park Commissioners, reducing the pay of all employees 20 per cent, was void and beyond the power of the Commissioners, such power being exclusively in the Civil Service Board. The rule of the Civil Service Board of January 6, 1932, reducing the minimum rate for each position by 20 per cent is then set out as is also the notice of the change published in the Chicago Evening Post on January 7, 1932. The petition then charges that the new rule is void because it reduces the minimum rate, because the published notice, in providing that the rule be immediately effective instead of 10 days later, did not conform to the statute; that said rule arbitrarily destroys uniformity of pay, because it does not apply to petitioners who were receiving the maximum rate and because it is an abuse of discretion in that it affects only employees receiving the minimum rate; that thereafter up to September, 1932, petitioners received reduced salaries in violation of their rights.

It is further averred in the petition that by an ordinance adopted September 21, 1932, the South Park

Commissioners restored the former rates of pay, to take effect October 1, 1932, but thereafter no employee was to be paid for his regular weekly day off and the commissioners were to be recompensed for vacations earned thereafter by the deduction of one day's pay each month, said latter deduction to be repaid at the time of the vacation. Said petition thereupon charges that the Park Commissioners had no power to take this action, such power being exclusively in the Civil Service Board.

It then charged in said petition that the Civil Service Board never adopted the alleged ordinance of the South Park Commissioners of September 21, 1932; portions of the rules of the Civil Service Board relating to vacation allowances and providing that an employee, obliged to work on his regular day off, shall not be paid extra, but shall be given time off on some other day.

It then charged in said petition that for several years prior to September 21, 1932, said petitioners were allowed one day a week off with full pay, and annual vacations with pay, but beginning October, 1932, and thereafter through 1934, over their objection and contrary to their rights, there was deducted from their pay, one day's pay for each weekly day off and one day's pay a month for the vacation allowance; that when they objected they were advised on numerous occasions by the Civil Service Board and the Commissioners that the deductions were temporary, that the full pay would be restored, and that they would be reimbursed.

Continuing, the said petition then alleges the creation of the Chicago Park District and its succession to the South Park Commissioners and avers that the act creating the Chicago Park District required that any funds held by a superseded district for a particular purpose be applied to that purpose and required that

the proceeds of taxes levied before the act took effect be applied to the purposes for which levied; that the South Park Commissioners turned over to the Chicago Park District in excess of $1,000,000; that since May 1, 1934, the Chicago Park District has collected a large amount of money from taxes levied by the South Park Commissioners in 1932, 1933, and 1934, and earlier, and that during said years there were no provisions for a budget system or appropriation ordinance system and it was the custom of the South Park Commissioners to estimate annually the needs of the district without regard to any budget or definite appropriation; that in 1931, 1932, 1933, and 1934, the estimates of the South Park Commissioners were sufficient to pay all employees their salaries in full and therefore all taxes were levied without consideration of the subsequent deductions.

The petition further alleges that the South Park Commissioners and the Chicago Park District have always had sufficient moneys to pay petitioners; that in January, 1932, there was in excess of $150,000 in the South Park District corporate fund; that on October 1, 1932, the South Park District had a cash balance of $631,000; that the Chicago Park District received from the South Park District and from the latter's tax levies in excess of $1,500,000; that therefore there will be no disturbance of the public service if the sums demanded are paid.

Petitioners further aver that on many occasions in 1932, 1933 and 1934, they requested payment of the sums deducted; that the demands were made by them and all other employees; that the South Park Commissioners and the Civil Service Board suggested they be patient and their pay would be restored; that another demand was made immediately prior to May 1, 1934, on both the Commissioners and the Civil Service Board and both requested petitioners to be patient until after

the Chicago Park District took charge, when the back salaries would undoubtedly be paid; that thereafter petitioners and all other employees made demands on the Commissioners of the Chicago Park District and on the Civil Service Board and were again requested to be patient; that final demand was made on August 15, 1935 by petitioners and all other employees, on the Commissioners and the Civil Service Board and then for the first time, they were advised that reimbursement would not be made and they would have to sue; that thereupon petitioners retained counsel and so advised the Chicago Park District on August 29, 1935.

Petitioners charge that there is due the following:

To Hollie ...............................$1,345.69
" Dibble ............................... 1,285.76
" Daniel Murphy ....................... 1,081.65
" Hanrahan ............................ 1,285.54
" Timothy Murphy ...................... 1,160.62
" Bohnen ............................. 1,285.09

After various motions to strike the petition, which resulted in amendments being filed thereto, the defendants on December 23, 1936, filed their answer to the second amended petition, denying its sufficiency and the petitioners' right to relief. The substance of the answer, so far as is necessary in order to understand the issues which were made in detail, is as follows:

Defendants admit that under the Act of 1869, the South Park Commissioners, by ordinance, created a police force and provided for the appointment of police officers and other employees in that department, but deny petitioners were on the police force in 1932, 1933, and 1934, and deny that the positions filled by petitioners were ever legally created.

Defendants further deny that under the Civil Service Act of July 1, 1911, there was vested in the Civil

Service Board all of the powers in connection with employment and the payment of wages and salaries, and aver that said act did not take from the South Park Commissioners the power to regulate employment and payment of wages and salaries and that in 1932, 1933 and 1934, the Commissioners were the sole authority in determining employment and payment of wages and salaries.

Defendants aver that the provisions of the Civil Service Act, providing that the Civil Service Board shall prescribe by rule the maximum and minimum pay for each grade, also provide that the adoption of maximum and minimum rates of pay shall be solely for the purpose of establishing uniformity of pay.

Defendants deny that on January 6, 1932, and in 1932, 1933 and 1934, petitioner Hollie was receiving $241.65 per month as salary, or that petitioners Dibble, Daniel Murphy, Hanrahan, Timothy Murphy and Bohnen were receiving a salary of $208.33 per month; deny that petitioners were employed on a monthly basis; deny that under the rule of the Civil Service Board they were receiving the maximum pay, or were entitled to receive the maximum pay in 1932, 1933, and 1934 and aver that they were entitled to receive only such salaries as the Commissioners determined.

Defendants deny the alleged ordinance of April 17, and May 15, 1912, deny all employees were paid thereunder, and deny that under said ordinance patrolmen were to receive the minimum pay for the first year, the average between the minimum and the maximum for the second year and the maximum for the third year, and that the sergeants of police were to receive the minimum for the first six months, the average between the minimum and maximum for the second six months and the maximum for the second year; deny that petitioners were entitled to receive the maximum rates in 1932, 1933 and 1934.

Defendants deny that the ordinance of January 5, 1932, reducing the pay of all employees 20 per cent, was void; deny that all authority with respect to employment and payment of employees was exclusively in the Civil Service Board, and aver that the power to regulate employment and salaries of employees was exclusively in the Commissioners; deny that the rule of the Civil Service Board of January 6, 1932, is void or violates the statute, or reduces the minimum rate of pay only, or that the publication of January 7, 1932, violated the statute, or that the rule is unreasonable or destroys uniformity in pay, and aver that the rule applies to all employees and establishes uniformity in pay; deny that the rule did not apply to petitioners because they were receiving the maximum rate; deny they were entitled to the maximum rate and aver they were entitled only to the salary fixed by the Commissioners; deny the rule is arbitrary or affects only those receiving the minimum rate or is unjustified, and aver it was justified by the depression and the failure of the taxpayers to pay taxes.

Further answering defendants deny any rights of petitioners were violated or that they made any protest or objection; deny that the ordinance of September 21, 1932 was void, or that the Commissioners had no authority to regulate payment of salaries or that such authority was exclusively in the Civil Service Board; deny that it was necessary for the Civil Service Board to adopt said ordinance and aver that the sole authority to regulate conditions of employment or the right to vacations is in the Commissioners and no rule of the Board could affect the authority of the Commissioners.

Defendants then aver that petitioners have not set out the entire rule pertaining to vacations and proceed to quote an additional portion thereof; aver that the Commissioners were the sole authority to determine the right to vacations and deny that the Civil Service

Board passed the rules set forth in paragraph 14 of the petition or that such rules would be relevant; deny that the Board passed the rule alleged in paragraph 15 of the petition or that such rule would be relevant and aver that the Board had no right to adopt rules for the regulation of employment.

Defendants deny that the alleged rules pertaining to vacations and weekly days off were the only rules and regulations so adopted; deny that prior to September 21, 1932, petitioners were allowed one day a week off with pay, or annual vacations with pay, and aver that petitioners had no legal right to a day off with pay or to vacations with pay, and aver that the Commissioners had full authority to provide that employees should be off one day a week without pay and should take vacations without pay; deny that in 1932, 1933 and 1934, the Board certified the pay on a monthly basis or under the classification existing January 1, 1932, or that petitioners objected, or that their rights were violated, or that the rules were violated; deny that petitioners objected to the deductions or reductions made in 1932, 1933, and 1934; deny that petitioners were advised by the Board or the Commissioners that the deductions were temporary, or that full pay would be restored, or that they would be reimbursed; deny that there were any funds in the hands of the South Park District or now in possession of Chicago Park District held for the purpose of paying salaries claimed; aver that section 12 of the act creating the Chicago Park District provides that any surplus of funds of superseded districts held or levied for particular purposes shall, after completion of such purposes, revert to the general corporate fund of the Chicago Park District.

Defendants further deny that the South Park District turned over to the Chicago Park District in excess of $1,000,000; deny that the Chicago Park District has collected a large amount of taxes levied by the South

Park District for 1932, 1933, and 1934, and earlier, and aver that such moneys are part of the general corporate fund of the Chicago Park District and subject to its debts; deny that in 1931, 1932, 1933 and 1934, the estimate of the South Park Commissioners and the ordinance passed in pursuance thereof were sufficient to pay petitioners and other employees their full salary without deductions or that all taxes were levied without taking into account subsequent deductions and aver that said estimates did not create any rights, or any contract, or any definite rate of pay, or right to continue in the employment or to be employed under any specific terms; deny that the South Park District or the Chicago Park District have always had sufficient moneys from taxes to pay the salaries in full and aver that the receipts of such moneys would create no rights in petitioners in the absence of action by the Commissioners reversing their prior action in reducing salaries; deny that the South Park District had $150,000 in January, 1932, or a cash balance of $631,000 on October 1, 1932, or that said sums were sufficient to pay the salaries in full and aver that said sums would have been subject to the debts of the District and their existence would create no right to a fixed salary other than provided by the Commissioners; deny that the Chicago Park District received from the South Park District in excess of $1,500,000, that said sum is available to pay petitioners and that no disturbance of the public service will result from granting the relief prayed.

Defendants further deny that petitioners requested payment; deny that such requests were made by petitioners and other employees; deny it was suggested their salaries would be restored, or suggested by the Commissioners and the Board that they be patient and they would be reimbursed.

Defendants deny in detail every allegation of the petition in respect to demand made upon defendants or any of them and specifically deny the promises or

representations alleged to have been made by the defendants; deny there is due petitioners the amounts set forth in paragraph 23 of the petition.

Defendants aver there is a misjoinder of defendants; that petitioner does not sufficiently state the legal character and existence of the offices or position of petitioners and does not show any legal action creating or appropriating for such offices or positions; that the petition does not show the creation of any such offices or positions to be actually filled by petitioners or appropriate for same, or show the existence of any funds for payment of the claims, or the appropriation of any moneys to pay them, or that defendants have any funds to pay them and defendants call attention to the statute limiting the disbursements of the funds of the Chicago Park District to such purposes as have been appropriated for the annual appropriation ordinance.

Defendants further aver there is a misjoinder of petitioners, that petitioners have been guilty of laches as they took no action until January 29, 1936, and did not obtain leave to file the second amended petition until December, 1936, and payment of the sums claimed will create confusion and disorder and disarrange the public service; defendants aver that beyond the power to adopt the rules, the Civil Service Board had no power to regulate actual employment, or terms of employment, or salaries paid, but such power was solely in the Commissioners; petitioners were at all times paid within the maximum and minimum prescribed by the Board; petitioners made no demand upon defendants prior to the filing of the second amended petition; no facts are set forth showing any legal duty of the defendants to perform the acts sought to be performed and defendants deny that petitioners are entitled to the relief prayed.

On December 8, 1936, one John E. Adams and 428 others filed an intervening petition in which the interveners alleged that they were employees of the South

Park District in 1932, 1933 and 1934, or some part thereof; that interveners were all civil service employees and that this petition was also filed on behalf of all the other employees of the South Park District, in those years, who might desire to join; that the rule of the Civil Service Board in force in 1932, 1933 and 1934, provided that all offices and places of employment be classified for the purpose of establishing grades and fixing standards of examination as set forth in schedule A, which is attached to the intervening petition as Exhibit B, and that all the interveners were employed in accordance with said rule and schedule; that all interveners were employed on a monthly salary basis and were entitled either to the maximum rate or to salaries in excess of the minimum rate; that interveners adopt all prior proceedings in this case and adopt all allegations in the second amended petition, except such as have no application to them; that they adopt the prayer for relief of the second amended petition; that there is due them the sums of money set opposite their names in Exhibit A, attached to the intervening petition, and pray that an order be entered directing the payment of such sums.

Exhibit A, to which defendants refer, shows that of the 429 interveners, the only ones in any way connected with the police department are 246 patrolmen, 14 sergeants of police, 5 police women, 3 lieutenants of police and 1 police clerk. The other 160 interveners are attendants of various kinds, clerks, foremen, engineers, lamp trimmers, stenographers, instructors, janitors, chauffeurs, directors, and many others.

Defendants filed their answer to the above-mentioned intervening petition on December 23, 1936, and after reserving all right of exception to the intervening petition and denying its sufficiency and denying the right of interveners to the relief sought, they further

deny that interveners were employees of the South Park District or employed by the Commissioners thereof in 1932, 1933 and 1934, or some part thereof; deny that their grade, salary, and the amount alleged to be due is or was as set forth in Exhibit A; deny that they were civil service employees; deny their right to file the intervening petition and their right to file a representative petition for mandamus; deny that Exhibit B is an exact and detailed copy of Schedule A; deny that interveners and other employees were employed in accordance with Rule 1 and Schedule A; deny that they were employed on a monthly basis and that in 1932, 1933 and 1934, they were entitled to the maximum rate of pay or to salaries in excess of the minimum rate; deny that any rules of procedure were created by ordinance and adopted by the Civil Service Board; deny that they have the right to adopt the prior proceedings in this cause or to adopt the allegations of the second amended petition; deny all the allegations alleged to have been adopted and deny the sufficiency of the intervening petition and aver that it sets forth no facts showing a right to the compensation claimed; aver that the adoption of the prayer of the second amended petition is not sufficient as a basis for issuance of the writ; deny that interveners suffered any unlawful deduction in pay or that there is due them the sums set forth in Exhibit A; defendants adopt paragraphs 1 to 35 inclusive of their answer to the second amended petition as part of this answer; deny that interveners are entitled to relief and pray to be dismissed.

Thereafter on December 30, 1936, a second amended intervening petition was filed by Patrick J. Lavin and sixty-five other persons. Of the sixty-six petitioners, the only ones in any way connected with the police department are thirty-two patrolmen, one sergeant of

police and two lieutenants of police; the other thirty-one interveners are janitors, attendants, engineers, instructors, watchmen, clerks, foremen, etc.

On December 30, 1936, an order was entered by the court ordering that the answer of the defendants to the earlier intervening petition stand as the answer to the later or second intervening petition.

The trial court certified this case to the Supreme Court on the constitutionality of the laws and ordinances which were involved, and also because of its being a matter of public importance, and after due consideration the Supreme Court transferred the case to this court.

Much of the arguments as contained in the briefs are devoted to the validity and constitutionality of the laws and ordinances, which questions we have no power to determine and for that reason we shall consider only the pertinent points which we consider applicable and which come within our jurisdiction.

Plaintiffs' evidence did not show the employment of petitioners or that they occupied such positions of employment for which they now seek compensation. *Stott v. City of Chicago,* 205 Ill. 281; *People v. City of Chicago,* 327 Ill. 62; *Birch v. City of Chicago,* 211 Ill. App. 404.

The evidence further shows that after the ordinance was passed reducing the salaries of all employees of the Chicago Park District 20 per cent, the original petitioners in this case, Hollie, Dibble, Daniel Murphy, Hanrahan, Timothy Murphy and Bohnen, who were members of the Policemen's Benevolent Association of the South Park District, attempted to make a demand upon the Park Board, but instead of doing that they had a talk with individual members of the Park Board and with Maurice Flynn, who was president of the Policemen's Benevolent Association and with one Howard who was also a member of said association;

that said petitioners claim to have made a demand, but we do not think the demand was in such form as is required by law; that on the contrary the conversations they had with individual members of the South Park Board and their statements that the commissioners told them that the reduction was only temporary and that they would eventually receive their pay, could not be binding on the Park Board, as it appears from plaintiffs' evidence that the statements which were made, even if true, were only the opinions of the individual members. In addition to this the letters from former members of the South Park Commissioners, which by stipulation were received in evidence, emphatically deny that any demand was ever made upon them either as individuals or as members of the South Park Commission. We think such claimed demand was not sufficiently specific as required by law, which provides that a demand to have the thing done shall precede the filing of a petition for mandamus.

It is next contended that the petitioners are guilty of laches. This we think is true. The cause of action arose in January, 1932, and suit was not commenced until four years thereafter. In the meantime the South Park Board had by legislative enactment been merged with the Chicago Park District, with all the changes incident thereto. The indebtedness which the petitioners and their interveners claim, amounts to over a half million dollars and, if the defendants are liable therefor, suit could have been brought and the amounts could have been appropriated for and paid during the years of 1932, 1933, 1934, 1935 and 1936. But to compel the Park Board to pay it all in one sum, we think would create a hardship upon the defendants and taxpayers. *People ex rel. Mulvey v. City of Chicago*, 292 Ill. App. 589, and cases therein cited.

It is next contended that the interveners, some 488 in number, should also recover. It is claimed that the

interveners (being the balance of the employees of the Park District) have the right to come in later and attach themselves to the original suit and take advantage of anything that may have been done by original petitioners prior thereto, such as the filing of notice, demand, etc. It is not contended by such interveners that any demand was made for them or on their behalf prior to the beginning of the suit.

In the case of *Coughlin v. Chicago Park District*, 364 Ill. 90, the court at page 107, said: ''They do not allege that they made such demand and the proof is that they did not. They claim to sue for themselves and all other members of the National Union for Social Justice, whose situation and interest are similar to theirs,— in other words, to sue in a representative capacity. A demand and refusal was prerequisite to entitle them to sue. (*Murphy v. City of Park Ridge*, 298 Ill. 66.) In 38 Corpus Juris, p. 834, the rule is laid down that one person cannot by *mandamus* enforce the private rights of another. These appellees were improperly joined as petitioners.''

Regarding the intervening petition filed January 29, 1936, there is no allegation that any demand was made by such interveners upon the defendants. In the petition for mandamus filed April 22, 1936, wherein certain paragraphs were amended, it is alleged that a demand was made on March 6, 1936, upon the Chicago Park District for payment of said unlawful deductions. In the amended petition which was filed August 5, 1936, it is alleged that on March 6, 1936, petitioners by registered mail sent a letter addressed to the Chicago Park District, making a demand that said District pay to them the amounts of money ''unlawfully deducted'' from their salaries by the South Park Commissioners during the years 1932, 1933 and 1934. We cannot tell from reading this demand who was to determine the amount that was ''unlawfully'' retained by defendants.

The main contention of petitioners seems to be that the South Park Board did not have the right to fix the salaries of its employees, but this was the exclusive duty of the Civil Service Board. We do not think it was the intention of the legislature to deprive the South Park Commissioners of the right to fix salaries and appropriate for the same. The purpose, as we view it, of the Civil Service Board was that after the salaries were fixed by the Commissioners, the Civil Service Board fixed a maximum and minimum for salaries of the various employees so as to carry out the principle of uniformity and prevent discrimination as to salaries of employees of the same class. *Gathemann v. City of Chicago,* 263 Ill. 292.

We do not believe the employees had any vested right, either in the positions they occupied or in the vacations which they had enjoyed but which were discontinued owing to the depression.

Counsel for petitioners and interveners maintain that there were at all times funds and other assets from which the claims of plaintiffs could be paid in full and that the payment of the judgment will not disturb or disrupt the public service, and cite the case of *People v. Village of Bradley,* 367 Ill. 301. In that case relief was sought by the relators by mandamus against the Village of Bradley. The relief sought was to compel the village to take appropriate steps to pay the amount of certain judgments obtained on April 26, 1932. The Supreme Court in its opinion at page 307, said: ''The money collected by the village from the special assessment levied to pay the cost of the improvement constituted a trust fund available to those having legal claims for materials furnished, or labor performed, in the course of the construction of the sewer. The village could not lawfully appropriate any part of those funds to other corporate uses. The withdrawn funds are treated as still in the custody of the

village for the purpose of paying the liability imposed by its contract for the improvement. To permit the village to say it no longer has the money, or is unable to pay, would be to place municipalities in a position to defeat the lawful claims of contractors who have, in good faith, fulfilled their undertakings for the construction of, or the furnishing of materials or labor for, local improvements.''

We do not believe the facts in that case make the law there stated applicable to the situation here. There the village had made a lawful contract for the building of a sewer to be paid for by special assessments, collected the money and used it for other purposes. A judgment was obtained fixing the liability of the village and nothing remained but for the village to restore the money which it had unlawfully diverted and give it to the persons for whom it was originally intended. Such is not the situation in the instant case.

In the case at bar the South Park Commissioners had the right to fix the pay of its employees at any time as long as it was done in good faith and not for the purpose of political extravagance or discrimination and the same was thereafter approved by the Civil Service Board.

Our attention is next called to the final order entered against the defendants, which is directed to the Chicago Park District, which corporation did not come into existence until 1934, two years after the so-called cause of action arose in this case. A portion of that order reads as follows:

''The court therefore finds that there is now due and owing and payable to the foregoing relators (plaintiffs) and all intervening petitioners, and each and every one of them, and after allowing to the defendants (respondents) all of their just credits and set-offs, the respective sums of money hereinabove set forth

and appear opposite the name of each relator and intervening petitioner;

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

"(a)   That the Chicago Park District, a Municipal Corporation, is hereby ordered and directed to forthwith pay to the relators (plaintiffs) and intervening petitioners, and each of them, the respective sums of money hereinabove found due and owing to each and all of the relators and intervening petitioners hereinabove set forth.

"(b)   That a peremptory Writ of Mandamus issue forthwith against Robert J. Dunham, Harry Joseph, Philip S. Graver, James C. Petrillo and Stephen I. Witmanski, as Commissioners of the Chicago Park District, and their successor or successors in office, commanding them to forthwith pay, or cause to be paid, to the relators (plaintiffs) and intervening petitioners, and each and every one of them, the respective sums of money hereinabove set forth and found due and owing to the said relators and intervening petitioners; commanding them and their successor or successors in office to forthwith meet as a body of commissioners of the Chicago Park District, a Municipal Corporation, and to appropriate the sum of money representing the total amount hereinabove set forth and found to be due and owing to all of the relators (plaintiffs) and intervening petitioners; that the said commissioners as a body of commissioners of the Chicago Park District, a Municipal Corporation, are commanded to appropriate sufficient moneys for the payment of the respective amounts due and owing as is hereinabove set forth, to all and each and every one of the foregoing relators and intervening petitioners; and further commanding Robert J. Dunham as president, Harry Joseph as vice-president, Frank Lyman as secretary, E. E. Brown as treasurer and E. N. Heinz,

as comptroller, and each and every one of them, and their successor or successors in office, as officers of the Chicago Park District, a Municipal Corporation; Robert J. Dunham, Philip S. Graver and Blaine Hoover, and each and every one of them, and their successor or successors in office, as members of the Civil Service Board of the Chicago Park District, a Municipal Corporation, that they as officers of said Park District and as members of the Civil Service Board of said Park District, do forthwith perform any and all acts that may be necessary in relation to the appropriation and setting aside of the amounts of money necessary to pay to the relators and intervening petitioners the respective amounts herein found due to them, including the preparation of payrolls and certification of payrolls; . . ."

After reading the foregoing order it must at once be apparent that the attention of the trial court was not directed to making a finding as to whether or not the Chicago Park District had any money on hand at that time in any fund with which to make payment and when it commanded said District to appropriate this sum of money it did not state from what fund it was to be derived. The money either had to be appropriated from the money on hand or available, or a tax would have to be levied for the purpose of creating such fund. By the command in the order, that such actions be performed, we assume it was meant that the legislative body of the District shall forthwith pass an ordinance and appropriate such money as is required by the order. This would be in violation of the act creating the Chicago Park District, as contained in Ill. Rev. Stat. 1937, ch. 105, ¶ 333.17, sec. 17, p. 2275 [Jones Ill. Stats. Ann. 96.567]. That section after stating that the fiscal year of the Chicago Park District shall commence on the first day of January and end on the 31st day of December and this period shall constitute the

budget year of the district and the fiscal provisions hereinafter set forth in this section shall apply only in the years following the year of the adoption of this act, states the following:

"At least sixty days prior to the beginning of each fiscal year, the secretary shall prepare and submit to the president a budget report to the commission which shall include, among other things, a statement of proposed expenditures for the ensuing fiscal year. . . ." Said section then sets out in detail how said report shall be itemized and that there shall be a hearing by the Commission and it then provides that in no event shall the aggregate amounts appropriated exceed the total means of financing. It then further provides:

"After the adoption of such appropriation ordinance the commission shall not make any further or other appropriation prior to the adoption or passage of the next succeeding annual appropriation ordinance and shall have no power either directly or indirectly to make any contract or do any act which will add to the expense or liabilities of such district, anything or a sum over and above the amount provided for in the annual appropriation ordinance for that fiscal year. . . ."

An observance of the order entered in this case would be a violation of the statute. We do not mean to say, however, that the statute does in any way interfere with or prevent the courts in a proper case from compelling the observance of legal duties by public officers.

It will be seen that this case is not presented free from doubt as to the rights of the plaintiffs. The Supreme Court said in the case of *People ex rel. Rising v. Ames,* 360 Ill. 31, 35, 195 N. E. 435: "The allegations of the appellee's petition do not show a clear right in them to the writ of *mandamus.* The writ will not be awarded in a doubtful case but will issue only where the right of a relator is clear and undeniable

and the parties sought to be coerced are bound to act. *People v. Brentano,* 259 Ill. 359, 369; *People v. Busse,* 248 id. II.''

As stated above the relator must show clear and undoubted right to a writ of mandamus. *People ex rel. Wieboldt Stores v. City of Chicago,* 289 Ill. App. 276, 7 N. E. (2d) 82; *People ex rel. Anderson v. Village of Bradley,* 288 Ill. App. 162.

Other points are raised and discussed in the briefs filed in this cause, among which is the question as to the constitutionality and validity of the ordinances and statutes, which as we have heretofore stated, we are prohibited from considering.

From all the facts and circumstances in evidence and the law applicable thereto, it does not appear to us that the plaintiffs have proven a clear and undoubted right to the relief they ask.

For the reasons herein given the order of mandamus issued by the circuit court is hereby reversed.

*Order reversed.*

HEBEL, P. J., and HALL, J., concur.