Eveleen W. Atkinson, et al., Plaintiff-Appellants, v. Board of Education of the City of Chicago, a Body Politic and Corporate, Benjamin C. Willis, General Superintendent of Schools, Dolores L. Sheehan, Earl E. Strayhorn and Reginald DuBois, Constituting the Civil Service Commission of the City of Chicago, Carl H. Chatters, Comptroller of the City of Chicago, and Edmund P. Curry, Treasurer of the City of Chicago, Defendants-Appellees.

Gen. No. 48,910.

First District, Second Division.

October 15, 1963.

Michael F. Ryan, of Chicago (Richard F. McPartlin, of counsel), for appellants.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin, Assistant Corporation Counsel, of counsel), for members of Civil Service Commission and other officials of the City of Chicago, certain appellees. James W. Coffey, of Chicago (Frank S. Righeimer, John T. Mehigan and Richard E. Girard, of counsel), for defendants-appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court:

A second amended two count complaint (hereinafter called the complaint) brought by 50 plaintiffs employed as Civil Service school clerks in the Board of Education of the City of Chicago individually and as representatives of a class was dismissed on motion

of the Board of Education and other defendants. The case was decided on the pleadings. The plaintiffs appeal from the judgment against them.

Count I of the complaint alleges that plaintiffs had been school clerks in the classified service of the Board of Education of the City of Chicago for many years, that a clerk's duties include being a receptionist, stenographer, treasurer, statistician, counselor, record keeper, office machines operator, dispenser of supplies, books, CTA passes, public relations, file clerk and in emergencies, a nurse. It sets forth the duties of a school clerk and of school service aide as classified by the Chicago Civil Service Commission. The pertinent rules of the Civil Service Commission are outlined. As of January 1, 1959, the Commission adopted a classification and salary plan that had been recommended by J. L. Jacobs & Co., a private consulting agency. This agency had recommended that the position of school clerk be placed in Grade 6; that the duties and responsibilities of the position warranted its placement in Grade 7 and that its classification in Grade 6 was a mistake; that the Commission corrected the mistake and placed the position in Grade 7, so advising the Superintendent of Schools in a letter dated April 21, 1959. The complaint alleges that at a meeting of the Trustees of the Board, in October 1959, the Trustees wished to provide for the salary differential that had been lost by school clerks, but due to the objection of the Superintendent of Schools and to an opinion by the attorney for the Board that it would be erroneous to pay the salary differential, the Board failed to appropriate and pay the difference in salaries lost by the clerks from January 1, 1959 to October 19, 1959. The complaint alleges that prior to 1959, the position of school clerk was classified as being in Grade 2, under the then classification plan with a salary range from a minimum of $325 per

month to a maximum of $425 per month in the 6th year of service; that under the new classification and salary plan recommended by the Jacobs Company, the position in Grade 6 carried a minimum salary of $296 per month up to a salary of $415 per month in the 16th year of service. The complaint had attached as an exhibit, a copy of the Civil Service salary schedule recommended by the Jacobs Company survey as adopted by the Commission and used by the Board in making its appropriation for the 1959 salary as follows:

| Grade | 1st year | 2nd year | 3rd year | 4th year | 5th year | 6th year | 10 years | 16 years |
|-------|------|------|------|------|------|------|----------|----------|
| 6 | 296 | 311 | 326 | 342 | 359 | 377 | 395 | 415 |
| 7 | 326 | 342 | 359 | 377 | 395 | 415 | 435 | 457 |

The complaint alleges that for the year 1959 the Board based its appropriation for salaries upon the particular grade classification into which a position was placed; that in January 1959, objection was made to the Board about the placement of the position of school clerk in Grade 6 and at the January 14, 1959 meeting of the Board it was proposed that a study be made of the classification of school clerk and if it were found to be in error the mistake be rectified and the appropriate salary adjustment made. The complaint stated that on about October 27, 1959, the Board adopted a report which listed the position of school clerk as in Grade 7 effective October 1959. It also provided for salary increments in the various grades as recommended by the Jacobs Company survey. The complaint avers that the correction of the error in classification made by the Board in October 1959 resulted in having the school clerks paid the salary for a Grade 7 position from and after October 1959, but that the attempt by the Board to rectify the mistake made in the original classification of school clerk as in Grade 6, and to appropriate and pay the

salary differential lost by the plaintiffs from the period from January 1, 1959 to October 19, 1959, was prevented solely by a legal opinion of the attorney for the Board that such an appropriation constituted an improper retroactive salary increase. The complaint says that the adjustment of salary would not have been an improper retroactive salary increase, but a proper adjustment of the loss of salary because the school clerks had been illegally and improperly placed in Grade 6 instead of Grade 7. The complaint says that the Board has statutory authority to make additional or supplemental appropriations, and had made salary adjustments retroactively for positions within their jurisdiction; that this would not be an illegal appropriation but a salary adjustment of pay illegally withheld for services performed; that plaintiffs had made the request for the correction of the situation and that no further action had been taken. The complaint alleges that an actual controversy existed with respect to the rights, duties and obligations of the parties with reference to making provision for the salary differential due to the plaintiffs because of the original erroneous classification of the position of school clerk. The first count asks that the court adjudicate that the plaintiffs and those they represent as a class, are entitled to recover the salary differential loss for the period from January 1, 1959 to October 19, 1959, occasioned by the erroneous classification of the clerks in Grade 6 instead of Grade 7.

Count II of the complaint avers that the duties of school clerks were being performed by persons holding temporary appointments under the titles of "school service aide," "tool keeper," and "toolroom attendant," while there was in existence an eligible list for the position of school clerk; that the assignment of the duties of school clerk to persons employed as temporary appointees under the three other titles mentioned

96

and the appropriation under said titles, was a device to circumvent and evade the mandatory provisions of the Civil Service law and the Civil Service rules applicable. The complaint referred to various portions of the 1959 and 1960 appropriations by the Board wherein provisions for employment of these temporary employees was made; that there were approximately 290 temporary appointees performing duties, in whole or in part, of school clerks, under the three other titles noted; that there was an appropriation of $75,000 in 1960 for 25 clerks "to relieve teachers of clerical chores in large high schools," which appropriation contemplated temporary appointees to perform duties of school clerks in order to evade certification of the school clerk eligible list. The complaint states that on February 23, 1960, plaintiffs requested an investigation of their complaint under Sec 14 of the Civil Service Act, a copy of the request being attached to the complaint; that no action had been taken thereon; that it was illegal to make temporary appointments where there was an eligible list for the position and duties; that there was an actual controversy between plaintiffs as school clerks, and as members of the School Clerks' Union of Chicago, Local 224 of the American Federation of Teachers (AFL–CIO) and as representatives of the class of school clerks and the defendants, as to the employment of people to perform the duties of school clerk under other titles, without requisition from the appropriate eligible list. It further alleges that a protest was made to the Board by the American Federation of Teachers and thereafter by the President of the AFL–CIO Federation of Teachers, with respect to this matter. This Count prays that the court adjudicate that the defendants had no right to hire or pay temporary appointees to perform the duties of school clerks under the titles of school service aide, tool keeper and toolroom attendant.

In arguing for a reversal of the judgment plaintiffs point out that where a statutory ordinance or schedule fixes the salary of positions, it is the right and duty of public officials to appropriate for the salaries fixed and on their failure to do so judgment may be entered for the recovery of the salary differential, citing George v. City of Danville, 383 Ill 454, 50 NE2d 467; Kennedy v. City of Joliet, 380 Ill 15, 41 NE2d 957; Anderson v. City of Jacksonville, 380 Ill 44, 41 NE2d 956, and other cases. Plaintiffs say that the 1959 amendment to the School Code authorizes the Board to make additional appropriations for the year and specifically empowered the Board to provide for the payment of the salary differential lost by them due to their erroneous classification and that the statute does not prevent the Board from providing for and paying from its funds any charges imposed by law. Plaintiffs maintain that there is a distinction between liability and payment; that the liability may exist regardless of whether there is an appropriation and that the 1959 provisions of Articles 34–52 and 34–53 of the School Code do not apply to liability imposed by law, citing Chicago v. Luthardt, 191 Ill 516, 61 NE 410. Plaintiffs insist that action by the Board providing for payment to plaintiffs of the salary differential illegally withheld from them for past services would not violate the provisions of Article 4, Sec 19 of the Illinois Constitution. The plaintiffs agree that the power to fix the salaries of clerks is vested in the Board and that before the Board can make payment there must be an appropriation to which the payment can be charged. Plaintiffs say that the issue is whether the plaintiffs are entitled to a finding that they should receive the salary differential withheld from them from January 1, 1959 to October 19, 1959, because of the erroneous classification of their positions and that their rights to the correct salaries is not dependent upon the survey

98

made by the Jacobs Company nor upon the adoption of this plan and salary schedule by the Commission but upon the action of the Board in adopting, using and basing its salaries for its employees upon the Jacobs' survey as adopted by the Commission. Plaintiffs conclude that the salary schedule adopted by, relied upon, and used by the Board in determining salaries, is this "separate enactment" and that the Commission's original erroneous classification, corrected in April 1959 and the Board's original appropriation, do not vitiate the binding and pervading authority of this "separate enactment." Plaintiffs urge that under the schedule by which the Board bound itself to pay the salaries of its employees, the plaintiffs (being properly in a Grade 7 position) should have been paid for the entire year 1959 and that they have established their right to a judgment for the salary differential, for which the Board can then appropriate to pay these amounts or that defendants be commanded by a judgment in mandamus to do so.

The Civil Service grade classification of school clerks at the time of the adoption of the 1959 annual school budget was Grade 6. The Board in its budget fixed and limited plaintiffs' salaries for that year by appropriating specific amounts for salaries of school clerks as so classified for 1959. This was done pursuant to the authority granted by the Board in Sec 34–16 of the School Code which provides that the Board shall prescribe the duties, compensation and terms of employment of its employees. After the adoption of the budget the Commission, on April 21, 1959, notified the Board that the Commission had reclassified the position of school clerk to Grade 7. On October 14, 1959, the Board, pursuant to a legislative enactment approved by the Governor on July 10, 1959, adopted a supplemental budget appropriating for increases in salaries to school clerks to be operative by

its express terms as to plaintiffs beginning October 19, 1959, for the remainder of the year. The Board by this supplemental budget fixed the salaries of school clerks from and after October 19, 1959, for the balance of the year on the Board's pay schedule of Grade 7 employees. The period involved in this appeal is that between January 1, 1959, and October 19, 1959, during which time the school clerks were paid the salaries fixed in the original budget. The School Code provides that after the adoption of the budget the Board is prohibited from making any other appropriation or directly or indirectly incurring an expense or liability or expending any funds in excess of the amount appropriated in the budget. Sec 34-48 of the School Code (Ill Rev Stats 1961, c 122) prohibits the Board from expending any money during any fiscal year unless an appropriation has previously been made therefor in the annual school budget. Sec 34-49 of the Code prohibits and renders void any contract, expense or liability incurred without a previous appropriation. In Stahl v. Board of Education, 334 Ill App 366, 79 NE2d 640, where the contentions made by the plaintiffs in the instant case were rejected, the Court said, 371, that: "The [Civil Service] Commission has nothing to do with fixing the salaries. It considers salaries only to determine to what grade or class a position belongs. The power of determining and fixing wages and salaries of Board employees rests solely with the Board." See also People ex rel. Mulvey v. Chicago, 292 Ill App 589, 12 NE2d 13; People ex rel. Hollie v. Chicago Park District, 296 Ill App 365, 383, 16 NE2d 161.

Under the authorities it is clear that plaintiffs' salaries as school clerks for the period from January 1, 1959 to October 19, 1959 were fixed by the specific amount appropriated in the 1959 school budget. The Board could not expend public monies

or create a liability for the excess amount sought by plaintiffs because no appropriation had previously been made therefor and there was no separate ordinance or contract fixing salaries. Plaintiffs' complaint is devoid of any allegations that show that a "separate enactment" was ever made by the Board. The Board speaks only through its official proceedings. What one of its members might have done, or what the Board might have done, are conjectural and of no legal effect. The School Code provides that money can be appropriated or expended by the Board only at regular meetings of the Board and then by a vote of the majority of its full membership. The Board appropriates for positions by specific dollar amounts. The Board in its budget fixed each plaintiffs' 1959 salaries at a specific amount and this amount has been received by each individual clerk. The record does not show any statute, ordinance, resolution, by-law, or schedule adopted by the Board which fixed the salary of each plaintiff above the amount actually received. The Civil Service Commission's change in Grade classification cannot affect the salaries of the Board fixed in the budget. The Board salary schedule adopted in October 1959 shows that the increased salary for the position of school clerk was effective from October 1959 to the end of the year. There was no appropriation for this differential until the adoption of the supplemental budget in October 1959. The 1959 enactment of the General Assembly empowered the Board to appropriate for the retroactive payments sought by plaintiffs. The plaintiffs have not made out a case for relief under the allegations of the first count in the complaint.

■■ We turn to a consideration of the contention of plaintiffs that the defendants are without power or authority to employ temporary appointees in positions for which there is a Civil Service eligible list. Plain-

101

tiffs maintain that it is clearly illegal to appropriate for and hire employees under different titles to perform the duties of school clerk, since the complaint alleges there is in existence an eligible register for these positions. Plaintiffs say further that it is illegal to change the titles of Civil Service positions in order to avoid the mandatory requirement that the position be filled by certification and appointment from an appropriate eligible list. Plaintiffs point out that they sue not only as school clerks but as members of the School Clerks' Union of Chicago, Local 224 of the AFL–CIO and that as members of the Union they are entitled "to see that their capacity for membership growth is not thwarted" by the failure to certify school clerks from the eligible list and that the fact that these eligibles on the list might also bring mandamus to compel their appointment does not destroy the plaintiffs' rights to a judicial determination of the issue. The declaratory judgment provision of Sec 57.1 of the Civil Practice Act is not intended to permit litigation of moot or hypothetical cases or to enable parties to secure advisory opinions or legal advice with respect to anticipated future defaults. Exchange Nat. Bank v. County of Cook, 6 Ill2d 419, 129 NE2d 1; Spalding v. Granite City, 415 Ill 274, 113 NE2d 567. The scope of the section should be kept wide and liberal and not restricted by technicalities. The section provides that the court may "in cases of actual controversies" make binding declarations of rights. In Exchange Nat. Bank v. County of Cook, 6 Ill2d 419, 129 NE2d 1, the Supreme Court said, 421: "We have repeatedly held that such provision does not authorize the court to grant declarations of rights involving mere abstract propositions of law without regard to the interest of the parties, and that before a declaration of rights may be made there must be an actual controversy."

■ We are of the opinion that Count II of the complaint fails to set forth a justiciable issue or controversy which would require a declaratory judgment. No judgment is necessary to establish the abstract proposition that the Board of Education must comply with Civil Service law. The record shows that plaintiffs are school clerks occupying civil service positions; that none is on the civil service school clerk eligible list awaiting appointment to any vacancy and that no person on such an eligible list is a party to this suit. There is no actual controversy between any party to this suit and the defendants. None of the plaintiffs has been injured in any way. These remarks are applicable to the position taken by the School Clerks' Union of Chicago, Local 224, AFL–CIO. There is no allegation that any member of this Union is on a civil service school clerk eligible list awaiting appointment to any vacancy.

We think that the trial judge was right in entering judgment against the plaintiffs. Therefore the judgment is affirmed.

Judgment affirmed.

FRIEND and BRYANT, JJ., concur.