EMPIRE TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW YORK, PETITIONER, v. BOARD OF COMMERCE AND NAVIGATION OF THE STATE OF NEW JERSEY AND STATE HIGHWAY COMMISSION OF NEW JERSEY, RESPONDENTS.

Submitted October 3, 1939—Decided March 18, 1940.

Before Justices Trenchard, Case and Heher.

For the petitioner, *George T. Vickers* (*L. Edward Herrmann,* of counsel).

For the respondents, *David T. Wilentz,* attorney-general, *William A. O'Brien, William J. McCormack* and *Robert Peacock,* assistant attorneys-general.

The opinion of the court was delivered by

Heher, J. On April 15th, 1935, the Board of Commerce and Navigation, with the approval of the governor, granted to the State Highway Commission, for the construction of a public highway, a strip of land 120 feet wide, extending from a point in the mean high water line along the easterly shore of Newark Bay at or near Danforth Avenue, in the City of Jersey City, to a point in the mean high water line of its easterly shore at or near Eighth Street, in the City of Bayonne. The strip of land so conveyed then underlay the tide waters of Newark Bay, a navigable body of water, between the eastern shore's mean high water line and the bulkhead and pierhead line.

The Highway Commission covenanted and agreed, as part of the consideration for the grant, "to reclaim and fill up to proper grade" (to be agreed upon by the parties) "with suitable material the area of State's land now under water lying between the proposed highway and the mean high water line of the easterly shore of Newark Bay;" and "to permit access over the area so filled in to and from the proposed highway, both by vehicle and pedestrian traffic," and also "to permit access to the highway when constructed in respect to the lands now under water lying west of the proposed highway when such exterior lands shall be filled in."

Petitioner is the owner of a tract of land situate in the City of Jersey City, which, at the time of the aforesaid grant, was bounded on the west by the mean high water line of Newark Bay to the east of the strip so conveyed for highway purposes. The highway has been constructed "off the shore in front of and to the west of petitioner's said lands," and the State Highway Commission, in pursuance of its undertaking aforesaid, has (so runs the petition) "filled in * * *

the area of the State's land lying under water * * * between the easterly property line of the said granted highway strip and the mean high water line bounding petitioner's lands," the "fill extending to and upon petitioner's upland;" and the contentions are made that this constituted a trespass upon its riparian upland, whereby "the tide waters theretofore washing the shores of" its "lands * * * were artificially, by the said fill, completely and permanently excluded and the theretofore existing mean high water of the navigable waters of Newark Bay in front of petitioner's property were thus receded to the westerly right of way line of said 120-foot highway strip and westerly slope easement, thereby depriving petitioner as upland owner of all access theretofore enjoyed by it to utilize the said tide water according to the ancient right and privilege of upland with its riparian rights in and to the navigable waters of said Newark bay bounding said land;" that the Board of Commerce and Navigation was not invested with power to grant this strip of land to the Highway Commission "upon the terms and conditions" adverted to, and the State Highway Commission did not possess "legislative authority to fill in, or contract to fill in, the lands under water of Newark bay east of the easterly slope line of the right of way granted for said public highway route."

More specifically, it is said that, "by reason of the filling in done on behalf of the state, and not in the interest of navigation, whereby the tide waters were receded as to petitioner's property and a new and permanent mean high water line was created by the state," the line of petitioner's riparian upland now extends out "to the newly created mean high water line * * * in front of its said original upland, subject only to the public easement for highway purposes in the 120-foot roadway and its lateral support," and that petitioner has, "in the newly created upland, subject to the aforesaid public highway easement, the same rights it possessed as riparian owner of the original fast land upon said navigable stream;" and the prayer is for a declaratory judgment "adjudicating and determining" that the lands thus filled in "so as to exclude the tide waters" of the bay "have become and are a part of the fast land and are the property of and

belong to the petitioner extending to the newly created mean high water line upon the said Newark Bay in front of petitioner's upland, subject only to the public easement for state highway purposes in the 120-foot strip granted for roadway and the additional necessary slope area," and that "petitioner is the owner of said filled in land and henceforth shall have as riparian upland owner all of the rights and privileges inhering in upland lying upon the navigable waters of Newark Bay.

Apart from the question of whether these State agencies have in any material respect exceeded their granted powers, there would seem to be no doubt of the authority of the State itself to do what has been done here, unless, as intimated, some part of the upland has been taken for incidental highway purposes, and then the constitutional obligation to make compensation would arise. *Stevens* v. *Paterson and Newark Railroad Co.,* 34 *N. J. L.* 532; *Jersey City* v. *American Dock and Imp. Co.,* 54 *Id.* 215; *Ross* v. *Mayor, &c., of Edgewater,* 115 *Id.* 477; *American Dock and Imp. Co.* v. *Trustees of Public Schools,* 39 *Id.* 409; *Bouquet* v. *Hackensack Water Co.,* 90 *Id.* 203; *Woodcliff Land Imp. Co.* v. *New Jersey, &c., Railroad Co.,* 72 *Id.* 137; *Seacoast, &c., Co.* v. *American Timber Co.,* 92 *N. J. Eq.* 219; *Moore* v. *Ventnor Gardens, Inc.,* 105 *Id.* 730; *affirmed,* 109 *Id.* 132; *Mayor, &c., of Hoboken* v. *Pennsylvania Railroad Co.,* 124 *U. S.* 656; 8 *S. Ct.* 643; 31 *L. Ed.* 543. But there is no occasion to consider and determine the question. This proceeding is not tenable under the Declaratory Judgments Act. *R. S.* 1937, 2 :26-66, *et seq.*

It is embedded in our jurisprudence that the State is not suable in its own courts without its consent, and that a suit brought against a state agency is, in fact, a suit against the state if the judgment sought would operate to control the action of the State or subject it to liability. This immunity is an attribute of sovereignty. *Strobel Steel Construction Co.* v. *State Highway Commissioner,* 120 *N. J. L.* 298. In that case our court of last resort ruled that the State Highway Commissioner is an *"alter ego* of the State," and that the provisions of the statute creating the office and defining the

incumbent's powers and duties do not reveal a legislative purpose to waive this sovereign right of exemption to suit as regards that State agency; and we are not cited to any statutory provision that places the State Board of Commerce and Navigation in a different category. We find nothing in the act delineating the authority of this agency that betokens an intent to waive the State's immunity from suit and to expose it to the judicial process. *R. S.* 1937, 12 :1-1, *et seq.* See *Federal Housing Administration, Region No.* 4, v. *Burr,* 308, *U. S.* 541; 60 *S. Ct.* 129; 84 *L. Ed.* 456.

The act empowering the courts of record of this State to enter declaratory judgments and decrees within their respective jurisdictions does not disclose a different policy as respects matters within its purview. It may not be invoked for relief against the State. Section 2 :26-72 provides that "all persons having or claiming any interest which would be affected by the declaration shall be made parties to the proceeding;" and section 2 :26-66 defines "person," so used, as including "any person, partnership, joint stock company, unincorporated association or society, and municipal or other corporation of any character." The additional requirement of section 2 :26-72 that, "In a proceeding involving the validity of a municipal ordinance or franchise the municipality shall be made a party and be entitled to be heard," serves to make clear a purpose not to subject the State to its terms. The further direction of section 2 :26-72 that, "If a statute, ordinance or franchise is alleged to be unconstitutional, the attorney-general * * * shall also be served with a copy of the proceeding and be entitled to be heard," does not evince an intent to render the State liable to the compulsory provisions of the enactment.

Nor is there, as suggested by petitioner, any analogy in this respect between a petition for a declaratory judgment and a writ of *mandamus* commanding the Highway Commissioner to condemn lands taken for highway purposes. The right to a *mandamus* for this purpose proceeds from different considerations. It is grounded in the statute defining the powers and duties of the highway commissioner. *Haycock* v. *Jannarone,* 99 *N. J. L.* 183; *Goodavage* v. *State Highway*

*Commission,* 96 *N. J. Eq.* 424; *State Highway Commission* v. *Elizabeth,* 102 *Id.* 221; *affirmed,* 103 *Id.* 376.

Moreover, the pleaded transactions, in substantial part at least, had ripened into a cause of action, if they could give rise to a right of action; and the Declaratory Judgments Act is designed to provide a remedy for the adjudication of justiciable rights, duties, status and other legal relations of the parties before rights have been invaded or wrongs committed, and its provisions are not ordinarily invocable where another adequate remedy is at hand. The declaratory judgment was intended to modify the common law rule that there is no justiciable controversy until a right has been invaded. It supplements, and is not a substitute for, existing remedies; and whether relief shall be afforded under its terms is ordinarily a matter resting in sound judicial discretion. 1 *C. J. S.* 1022, *et seq.* See, also, *Brindley* v. *Meara,* 209 *Ind.* 144; 198 *N. E. Rep.* 301; 101 *A. L. R.* 682; *Bell Telephone Co.* v. *Lewis,* 313 *Pa.* 374; 169 *Atl. Rep.* 571.

Here, there are other adequate remedies available to petitioner. A writ of *mandamus* may issue against the highway commissioner commanding the institution of condemnation proceedings to fix compensation for lands taken. *Haycock* v. *Jannarone, supra.* And this court has, at the instance of the owner of the *ripa,* reviewed on *certiorari* a grant by the old riparian commissioners asserted to have been made in violation of the statutory provision disabling the commissioners from making such grant to a person or corporation other than the riparian proprietor without prior notice to the latter. This was held to be such an interest in the lands under water abutting upon the riparian owner's upland as entitled him to a review and remedial action on *certiorari. Shamberg* v. *Riparian Commissioners,* 72 *N. J. L.* 132.

Where the injury is thus remediable by *mandamus* or on *certiorari,* the Declaratory Judgments Act is not available; and, if the purpose is to have an adjudication of the title to the land where there has been no trespass or other invasion of the claimed right, this statutory remedy may not be invoked against the State.

The petition is therefore dismissed, with costs.