DONALD BAUGHER *et al.*, Plaintiffs-Appellees, *v.* DAN WALKER, Governor of the State of Illinois, *et al.*, Defendants-Appellants.

Fourth District   No. 13925

Opinion filed April 18, 1977.

William J. Scott, Attorney General, of Chicago (Paul V. Esposito, Assistant Attorney General, of counsel), for appellants.

McClure, McClure and Brannan, of Beardstown (Thomas J. Brannan, of counsel), for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Cass County and stems from an action instituted by two Illinois licensed pharmacists seeking declaratory judgment and injunctive relief. The relevant facts are undisputed.

Pursuant to a voluntary program conducted by the Illinois Department of Public Aid (Public Aid), the State of Illinois reimburses licensed participating pharmacists for prescriptions filled for public assistance recipients. Prior to August 1, 1975, Public Aid applied a reimbursement formula of $1.35 plus 30 percent of cost of the merchandise. Effective August 1, 1975, the formula was modified and pharmacists began to receive a flat dispensing fee of $1.75 per prescription. As a result of this formula change, a group of Illinois pharmacists had threatened or had begun a group or collective action, in which they refused to fill prescriptions paid by Public Aid. In response to this action, defendant Ronald Stackler, Director of the Department of Registration and Education of the State of Illinois (Department) sent a letter to all Illinois registered pharmacists regarding the boycott. The letter made note of the group action, and further pointed out to those participating in the boycott that section 7.6 of the Pharmacy Practice Act (Ill. Rev. Stat. 1975, ch. 91, par. 55.1 *et seq.*) prohibits "gross immorality." This term was defined in Rule V, paragraph 1, of the Rules and Regulations promulgated pursuant to the Act as "any willful act or practice hostile to the public health, safety and welfare."

The plaintiffs, Donald Baugher and Clark Moreland, are licensed Illinois pharmacists practicing in Beardstown and Rushville, Illinois, respectively. On August 15, 1975, they filed a complaint for declaratory judgment and injunctive relief in the Circuit Court of Cass County, Illinois. The complaint alleged that the plaintiffs participated in Public Aid's voluntary program, but that they were forced to opt out of the

program due to the modification of the reimbursement formula. The plaintiffs further alleged that the letter written to them by defendant Stackler threatened license suspension or revocation if the plaintiffs refused to fill prescriptions for public assistance recipients and stated that they would suffer economic loss and violation of their right to property if forced to fill prescriptions for public aid recipients. Furthermore, the plaintiffs contended that the institution of license revocation or suspension proceedings would irreparably injure the plaintiff's reputations in the practice of their profession. On August 15, 1975, after an *ex parte* hearing, the trial court entered a temporary restraining order, enjoining the defendants, Dan Walker, then Governor of Illinois, and Ronald Stackler from revoking, suspending or instituting proceedings to revoke or suspend the plaintiffs' licenses to practice pharmacy as a result of their refusal to fill prescriptions for persons which would be paid by Public Aid.

On August 20, 1975, the defendants filed a motion to dissolve the temporary restraining order, deny a preliminary injunction, and dismiss the complaint. This motion stated that the plaintiffs failed to show immediate and irreparable harm, that the plaintiffs had an adequate remedy at law through the administrative hearing procedure and the Administrative Review Act, and that the plaintiffs' complaint showed on the face that no action had been taken by the defendants against the plaintiffs in this case. The motion further stated that no actual controversy existed between the parties, and therefore a declaratory judgment was improper. On August 22, 1975, the plaintiffs filed their amended complaint which realleged matters contained in the original complaint and added that the defendants had published threatening statements with reference to the prescription reimbursement program, and that these statements constituted threats to illegally use the State's police power. Besides the letter sent by Stackler, no other allegedly threatening statement made by either defendant was incorporated into the amended complaint. The plaintiffs again asked for a temporary restraining order, declaratory relief, and a temporary and permanent injunction.

On August 22, 1975, the trial court issued a supplemental temporary restraining order. Also on August 22, 1975, defendants filed their motion for a stay of the trial court order which was denied on that same date. Later that day, the defendants filed a notice of interlocutory appeal, and on August 29, 1975, this court stayed the trial court's order.

On August 28, 1975, the defendants filed their motion to deny a preliminary injunction and to dismiss the amended complaint which realleged the grounds for dismissal raised in defendants' previous motion. A hearing was held on the defendants' amended motion and the plaintiffs'

motion for judgment on the pleadings on August 28, 1975. On September 16, 1975, the trial court entered its final order in this case. The court found that the defendants had attempted to illegally coerce the plaintiffs into continued participation in the prescription reimbursement program by means of published statements threatening revocation or suspension of plaintiffs' licenses. The court further found that the institution of license revocation or suspension proceedings would irreparably injure plaintiffs' businesses and reputations. In addition, the court found that plaintiffs did not have an adequate remedy at law, due to the statements made by defendants and due to the fact that the news media would become aware of the institution of proceedings by defendants. The court entered a declaratory judgment that plaintiffs' refusal to fill prescriptions which were paid by Public Aid did not constitute a basis for the suspension or revocation of plaintiffs' licenses. It also enjoined defendants from instituting license suspension or revocation proceedings because of plaintiffs' refusal to fill prescriptions paid by Public Aid.

On October 16, 1975, defendants filed their notice of appeal. Because the question surrounding the issuance of the temporary restraining order merged into the appeal from the final order the defendants moved to dismiss the interlocutory appeal on September 17, 1976.

The letter in controversy states:

"Dear Registered Pharmacist:

The Department has learned that a small group of pharmacists (approximately 200 around the State) has threatened or actually begun a group or collective action, refusing to fill prescriptions which are to be paid by the Department of Public Aid.

I am sure that you, as a responsible member of a profession that has long served the public according to the highest standards of ethical conduct, are a member of the vast majority of your fellow licensees who will have nothing to do with a boycott of citizens of this State whose prescriptions will be paid for by the Department of Public Aid.

I would like to commend the vast majority of registered pharmacists in this State, in advance, for their continued placing of the interest of the public before greedy self-interest. To that small minority of the profession who turn away from traditional ethical standards and participate in the boycott of a group of citizens of this State whose prescriptions would be paid by the Department of Public Aid, I point out that Section 7.6 of the Pharmacy Act and Rule V, Paragraph 1 of Rules and Regulations prohibits 'gross immorality: any willful act or practice hostile to the public health, safety and welfare.' "

■■ To receive injunctive relief, a plaintiff must show that the remedies at law are inadequate, in addition to proving the existence of a lawful right for which protection is sought and that irreparable harm will occur absent an injunction. (*G. H. Sternberg & Co. v. Cellini* (5th Dist. 1973), 16 Ill. App. 3d 1, 305 N.E.2d 317.) Where an adequate administrative procedure exists to determine the evidentiary basis for the complaint, injunctive relief will be denied. *Pye v. Marco* (4th Dist. 1973), 13 Ill. App. 3d 923, 301 N.E.2d 63.

■■ The Pharmacy Practice Act (Ill. Rev. Stat. 1975, ch. 91, par. 55.1 *et seq.*) establishes a procedure which affords the plaintiffs a hearing if license suspension or revocation proceedings are instituted against them. (Ill. Rev. Stat. 1975, ch. 91, par. 55.7—8.) In the event the Director of Registration and Education finds that substantial justice has not been done, a rehearing may be ordered. (Ill. Rev. Stat. 1975, ch. 91, par. 55.7—13.) In any event, all final administrative decisions are subject to the Administrative Review Act by reason of section 19 of the Pharmacy Practice Act (Ill. Rev. Stat. 1975, ch. 91, par. 55.19). For these reasons, we find that the plaintiffs had an adequate administrative remedy and, therefore, the trial court erred in granting the injunction.

■■■ Although an adequate remedy at law prohibits injunctive relief, the existence of another remedy will not preclude declaratory relief. (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252.) The trial court has the discretionary power to enter a declaratory judgment, and unless this action constituted an abuse of discretion, the trial court's decision will not be disturbed. (*Hoerdt v. City of Evanston* (1st Dist. 1958), 99 Ill. App. 2d 307, 241 N.E.2d 685.) Although the parties ought to be able to obtain a judicial resolution of an existing controversy without requiring the parties to irrevocably jeopardize their rights (*Richards v. Liquid Controls Corp.* (2d Dist. 1975), 26 Ill. App. 3d 111, 325 N.E.2d 775; *Charleston National Bank v. Muller* (4th Dist. 1974), 16 Ill. App. 3d 380, 306 N.E.2d 358), a trial court can not utilize the declaratory judgment section of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57.1) to litigate moot or hypothetical questions or to render advisory opinions with regard to anticipated legal problems. (*Farmers Insurance Group v. Harris* (3d Dist. 1972), 4 Ill. App. 3d 372, 279 N.E.2d 789; *Atkinson v. Board of Education* (1st Dist. 1963), 44 Ill. App. 2d 92, 194 N.E.2d 8.) Therefore, before a declaratory judgment becomes appropriate, the trial court must find that an actual controversy exists between the parties. (*Beck v. Binks* (1960), 19 Ill. 2d 72, 165 N.E.2d 292; *Berg v. City of Chicago* (1st Dist. 1968), 97 Ill. App. 2d 410, 240 N.E.2d 344.) An actual controversy may exist even though no wrong has yet been committed as long as there are adverse legal interests. (*Roberts v. Roberts* (1st Dist. 1967), 90 Ill. App. 2d 184, 234 N.E.2d 372.) Nevertheless, a

declaratory judgment is an inappropriate action for declaring the rights of the parties on a state of facts which has not yet arisen, or which is future, contingent and uncertain. *Berg v. City of Chicago* (1st Dist. 1968), 97 Ill. App. 2d 410, 240 N.E.2d 344.

■■ In the case at bar, the allegedly threatening portion of the letter, if it is a threat at all, is directed at a group of pharmacists who have, *as a group*, refused "to fill prescriptions which are to be paid by the Department of Public Aid." The plaintiffs neither alleged nor testified that they were participants in this collective boycott, nor was theirs a class action suit. Therefore any controversy between the existing parties is, at best, based on a state of facts which had not arisen and which was not certain to arise. As a result, the trial court should not have considered the plaintiffs' action for a declaratory judgment.

Accordingly, the judgment of the Circuit Court of Cass County is reversed.

Reversed.

STOUDER and SCOTT, JJ., concur.