ROCKY MOUNTAIN OIL AND GAS AS-
SOCIATION, a non-profit corporation,
acting through its Wyoming division,
the Petroleum Association of Wyoming,
a corporation, Robert E. Hudson, an in-
dividual, Burton/Hawks, Inc., a corpora-
tion, Marathon Oil Company, a corpora-
tion, Amoco Production Company, a cor-
poration, and Terra Resources, Inc., a
corporation, and True Oil Company, a
partnership, Appellants (Plaintiffs),

v.

STATE of Wyoming, The Environmental
Quality Council of the State of Wyo-
ming, Robert E. Sundin, as Director of
the Department of Environmental Quali-
ty, and William L. Garland, as Adminis-
trator of the Water Quality Division of
the Department of Environmental Quali-
ty, Appellees (Defendants).

No. 5517.

Supreme Court of Wyoming.

June 4, 1982.

Houston G. Williams and Richard L. Williams of Williams, Porter, Day & Neville, P. C., Casper, signed the brief and appeared in oral argument on behalf of appellants.

Steven F. Freudenthal, Atty. Gen., Walter Perry, III, Senior Asst. Atty. Gen., and Steve Jones, Asst. Atty. Gen., signed the brief and Steve Jones, Asst. Atty. Gen., appeared in oral argument on behalf of appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

Appellee, The Environmental Quality Council of the State of Wyoming (hereinafter referred to as appellee Council), promulgated certain rules and regulations on September 4, 1980, which undertook, among other things, to regulate discharges of commercial, municipal and industrial wastes, including "oil field wastes including water produced with oil and gas," and including "any discharge to the subsurface." Such rules and regulations require the obtaining of permits for such discharges. On November 14, 1980, appellants filed an action in the district court seeking (1) a judgment declaring that promulgated rules and regulations were invalid as being beyond and in excess of the powers and jurisdiction of appellees, and (2) an injunction restraining appellees from enforcing the provisions of such rules and regulations. The trial court granted appellees' amended motion to dismiss the complaint and its causes. In doing so, it found that the doctrine of sovereign immunity precluded the action against appellees, and it based the dismissal upon this ground. It also found that the independent action for declaratory judgment would not lie inasmuch as it was "in the nature of a petition for review" of an administrative action and was not filed within the time allowed for such review. On appeal, appellants present the issue of whether or not the doctrine of sovereign immunity is applicable. And if it is not applicable, appellants present the additional issue of whether or not an action for declaratory judgment is available as an independent action.

We reverse and remand with directions to deny the amended motion to dismiss.

## IMMUNITY

Section 30–5–104, W.S.1977, grants to the Wyoming Oil and Gas Conservation Commission the authority and power to regulate all phases of the drilling and operation of oil and gas wells, and disposal wells in connection with oil and gas production. It specifically provides:

"(d) The commission has authority:

\*   \*   \*   \*   \*   \*

"(ii) To regulate, for conservation purposes:

\*   \*   \*   \*   \*   \*

"(D) Disposal of salt water, nonpotable water, and oil-field wastes;"

Subsequent to the enactment of § 30–5–104, the Wyoming Environmental Quality Act, §§ 35–11–101 through 35–11–1207, W.S.1977, Cum.Supp.1981, was enacted. The questioned rules and regulations of appellee Council were promulgated pursuant to the power delegated in such act. Among other things, the declared policy and purpose of the act is "to enable the state to prevent, reduce and eliminate pollution," § 35–11–102, W.S.1977. See *Tri-State Generation and Transmission Association, Inc. v. Environmental Quality Council*, Wyo., 590 P.2d 1324 (1979). Section 35–11–103(c) of the act provides in pertinent part:

"(c) Specific definitions applying to water quality:

"(i) 'Pollution' means contamination or other alteration of the physical, chemical or biological properties of any waters of the state, including change in temperature, taste, color, turbidity or odor of the waters or any discharge of any acid or toxic material, chemical or chemical compound, whether it be liquid, gaseous, solid, radioactive or other substance, including wastes, into any waters of the state which creates a nuisance or renders any waters harmful, detrimental or injurious to public health, safety or welfare, to domestic, commercial, industrial, agricultural, recreational or other legitimate beneficial uses, or to livestock, wildlife or aquatic life, or which degrades the water for its intended use, or adversely affects the environment. *This term does not mean water, gas or other material which is injected into a well to facilitate production of oil, or gas or water, derived in association with oil or gas production and disposed of in a well,* if the well used either to facilitate production or for disposal purposes is approved by authority of the state, and if the state determines that such injection or disposal well will not result in the degradation of ground or surface or water resources." (Emphasis added.)

Appellants contend that, by its rules and regulations, appellee Council is attempting to do that which the Wyoming Oil and Gas Conservation Commission has been authorized to do and which the legislature has excepted from the powers of the Council. This issue is not before us on this appeal.[1] The only issue before us is whether or not the district court is precluded from reaching the question on the merits concerning the relative powers of the two state agencies because of the doctrine of sovereign immunity.

The majority rule is that generally the state may not be subject to a declaratory judgment action as a defendant because of the doctrine of sovereign immunity. 22 Am.Jur.2d Declaratory Judgments, § 85. Yet it is said as a general proposition:

"Declaratory judgment proceedings have been considered particularly useful in determining the rights of the individual vis-a-vis public authorities and administrative agencies. A judicial determination as to the power of public regulatory agencies and the validity of their rules and regulations enables the private individual to avoid uncertainty as to his rights and duties and to avoid the risks of civil and criminal liability without requiring him to use the more cumbersome writs of certiorari, mandamus, quo warranto, or prohibition. * * *" 22 Am. Jur.2d Declaratory Judgments, § 31, p. 880.

When a money judgment is not involved, when the only issue is one of construction or validity of a statute or constitutional provision, there would seem to be no reason to preclude a declaratory judgment on the basis of sovereign immunity in an action in which the state, its agencies, or its officers are defendants.[2] At common law, the root for the sovereign immunity defense was the tenet that the "King can do no wrong." The basis for the doctrine is now said to be a "social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property and instrumentalities." 72 Am.Jur.2d

---

1. Of interest are provisions in the act relative to the coordination between the Department of Environmental Quality and other state agencies. " * * * [I]t is hereby declared to be the policy and purpose of this act to * * * secure cooperation between agencies of the state * * *," § 35–11–102, W.S.1977. " * * * [T]he director of the department shall: * * * (ii) Advise, consult and cooperate with other agencies of the state * * *," § 35–11–109, W.S.1977.

2. Section 1–37–103, W.S.1977, provides:

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations."

States, Territories, and Dependencies, § 99, p. 491. When the question, as here, has nothing to do with whether or not the King is doing wrong, or whether or not the governmental function should be performed, but rather when it has to do with which arm of the King is doing the right, or which voice of the state is directing the governmental function, acknowledged to be proper, it would seem that sovereign immunity is not involved. In this instance, the issue is: Which of two state agencies can properly make rules and decisions in the exercise of a specific police power? To contend that the question should not be answered in a declaratory judgment action is without reason.

Appellees refer to *Retail Clerks Local 187 v. University of Wyoming*, Wyo., 531 P.2d 884 (1975), as holding that a declaratory judgment action will not lie against the state or its agencies under any circumstances on the ground of sovereign immunity. However, that action was for injunction and damages in addition to one for declaratory judgment. Because there was involved a money judgment and because the *only* issue was not one of construction or validity of a statute or constitutional provision, the rational and proper rule, supra, would not apply.[3]

In any event, subsequent legislation has changed the status of the doctrine of sovereign immunity. The state has fortified its waiver of immunity in declaratory judgment actions. The Wyoming Governmental Claims Act (§§ 1–39–101 through 1–39–119, W.S.1977, Cum.Supp.1981)[4] waives sovereign immunity for various actions grounded in tort and contract. It would be incongruous to preclude a declaratory judgment action on the basis of sovereign immunity if such action pertained to the tort and contract actions for which immunity is waived.

It is also inconsistent to recognize a waiver of immunity in declaratory judgment cases which also pertain to a money judgment on a tort or contract action, but not to recognize such waiver in cases, such as this one, wherein the potential for interference with governmental functions and control over state funds is much less, i.e., in cases wherein the only object is to obtain a determination of "rights, status and other legal relations."

■ Based on (1) the waiver of immunity as reflected in the Wyoming Governmental Claims Act, and (2) common-sense application of the purpose and intent expressed in the Declaratory Judgments Act, the state, its agencies and its officers may not raise the defense of sovereign immunity to actions under the Declaratory Judgments Act; provided that if such actions also concern those contract and tort claims which are subject of the Wyoming Governmental Claims Act, the procedural aspects of that act must be met.

■ The defense of sovereign immunity cannot be raised by any of the parties to this action because the only purpose of the action is to obtain a determination of the "rights, status and other legal relations" of appellants resulting from, or to result from, rules and decisions on the same matter by two separate state agencies, and because immunity has been waived.

## AVAILABILITY OF DECLARATORY JUDGMENT ACTION

■ Although not made a ground for its holding, the district court found that the independent action for declaratory judgment would not lie in this case inasmuch as it was "in the nature of a petition for review" of administrative action and was not filed within the time allowed for such

---

3. In *Retail Clerks Local 187 v. University of Wyoming*, supra, 531 P.2d 884, we also failed to address the issue presented and argued at length relative to the duty, power and authority of the University, its Board of Trustees, individually, and in their official capacities to do, or not do, the things about which complaint was there made.

4. The Wyoming Governmental Claims Act became effective July 1, 1979. The original complaint was filed in this case on November 14, 1980, and the order of dismissal was entered on April 21, 1981. The questioned rules and regulations of the Department of Environmental Quality were effective September 4, 1980.

review. It is proper for the supreme court to decide incidental questions which are bound to arise again in the case. *Chicago & N. W. Ry. Co. v. City of Riverton,* on reh., 70 Wyo. 119, 247 P.2d 660 (1952); and *Madison v. Marlatt,* Wyo., 619 P.2d 708 (1980).

"The relief, review, or redress available in suits for injunction against agency action or enforcement thereof, in actions for recovery of money, *in actions for a declaratory judgment of rights, status, or legal relations based on administrative action or inaction,* in actions for mandamus to compel administrative action, and in applications for writs of certiorari and prohibition to review or prevent administrative action *shall be available by independent action notwithstanding any petition for review filed."* (Emphasis added.) Rule 12.12, W.R.A.P.

"Courts of record within their respective jurisdictions may declare rights, status and other legal relations *whether or not further relief is or could be claimed.* No proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. * * *" (Emphasis added.) Section 1–37–102, W.S.1977.

"The Uniform Declaratory Judgments Act is remedial. *Its purpose is to settle and afford relief from uncertainty and insecurity with respect to legal relations,* and is to be liberally construed and administered." (Emphasis added.) Section 1–37–114, W.S.1977.

The majority of states applying the Uniform Declaratory Judgments Act hold that a proceeding under it may be maintained even though another remedy is available. See, e.g., *Neal v. Brockway,* 136 Vt. 119, 385 A.2d 1069 (1978); *Baugher v. Walker,* 47 Ill.App.3d 573, 5 Ill.Dec. 939, 362 N.E.2d 410 (1977); *Schriber Sheet Metal & Roofers v. Shook,* 64 Ohio App. 276, 28 N.E.2d 699 (1940); *Katz Inv. Co. v. Lynch,* 242 Iowa 640, 47 N.W.2d 800 (1951); and *Friestad v. Travelers Indemnity Company,* 452 Pa. 417, 306 A.2d 295 (1973). However, some states will not grant declaratory judgment relief if another adequate remedy is available. See, e.g., *King County v. Boeing Company,* 18 Wash.App. 595, 570 P.2d 713 (1977);

*State ex rel. Miller v. McLeod,* Mo.App., 605 S.W.2d 160 (1980); *Mascarin Professional Pharmacy v. Hart,* 13 Cal.App.3d 462, 91 Cal.Rptr. 560 (1970). And see *Anderson v. Wyoming Development Co.,* 60 Wyo. 417, 154 P.2d 318 (1944).

"While the Uniform Declaratory Judgments Act does not provide in specific terms, as do the Federal Rules, that the existence of other adequate remedies shall not bar declaratory relief, the state courts generally rely on the provisions of the Uniform Act or similar state statutes which state that declaratory relief may be granted 'whether or not further relief is or could be claimed,' and that the act 'is to be liberally construed and administered,' in holding that the right to declaratory relief is not barred by the existence of another adequate remedy. It has been noted that the alternative remedy available, such as damages, injunctive relief, and the like, may be harsher than the declaratory relief sought, and that if the plaintiff seeks declaratory relief the court is not required to compel him to seek a more stringent remedy. * * *" 22 Am. Jur.2d Declaratory Judgments, § 14, pp. 853–854.

Rule 57, W.R.C.P., is similar to the federal rule referred to in the Am.Jur. quotation. The pertinent portion of it (second sentence) is identical to the federal rule:

"The procedure for obtaining a declaratory judgment pursuant to section 3–5801 to 3–5816 inclusive of W.C.S. 1945 [§§ 1–37–101 to 1–37–115], shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. *The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.* The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar." (Emphasis added.)

The directions are clear. In Wyoming, the existence of another adequate

remedy will not, of itself, preclude declaratory judgment relief. We cannot relegate such relief to the position of an extraordinary, as opposed to an optional, remedy.

■ Of course, there must be a justiciable controversy, and the procedure cannot be used to secure an advisory opinion in a matter in which there is no justiciable controversy. *Anderson v. Wyoming Development Co.*, supra; *Mountain West Farm Bureau Mutual Insurance Company v. Hallmark Insurance Company*, Wyo., 561 P.2d 706 (1977); *Brimmer v. Thomson*, Wyo., 521 P.2d 574 (1974); and *Aetna Casualty and Surety Company v. Langdon*, Wyo., 624 P.2d 240 (1981). The declaratory judgment action is not proper where it will not terminate the controversy. *Wyoming Humane Society v. Port*, Wyo., 404 P.2d 834 (1965).

In this case, giving or refusing the relief prayed for in the complaint will terminate the controversy or uncertainty. And a justiciable controversy exists. The appellee Council's rules and regulations necessitate immediate and present action by appellants. They require the application for, and the securing of, permits for disposal of the water resulting from oil well activity. Failure to obtain the permits could not only result in heavy penalties, but could entail considerable expenditure of time and money in establishing the conditions necessary for obtaining such permits. As stated by appellants in their complaint:

" * * * [T]hey would be required to obtain duplicate and and [sic] unnecessary permits at great costs, expense and inconvenience together with expensive delays * * *."

Giving or refusing the relief requested in the complaint will have final force and effect upon the rights, status and legal relationship of the parties. *Cranston v. Thomson*, Wyo., 530 P.2d 726 (1975).

However, the added element which may be considered in cases such as this is the status of a declaratory judgment action filed in a court *which is an appellate court* for the same issue presented, or able to be presented, below. Here the declaratory judgment action was filed in the district court. The district court is designated the appellate court for judicial review of administrative actions.

■ Ordinarily, a declaratory judgment action is not a substitute for an appeal. *School Districts Nos. 2, 3, 6, 9, and 10, Campbell County v. Cook*, Wyo., 424 P.2d 751 (1967); *Stahl v. Wilson*, Fla.App., 121 So.2d 662 (1960); *Sparks v. Brock & Blevins, Inc.*, 274 Ala. 147, 145 So.2d 844 (1962); and *Bryarly v. State*, 232 Ind. 47, 111 N.E.2d 277 (1953). But such direct action is often available "even though there was a statutory method of appeal," *School Districts Nos. 2, 3, 6, 9 and 10, Campbell County v. Cook*, supra, 424 P.2d at 755. Here, there is no appeal actually pending and the issues are not moot.

■ However, there is a restriction on the availability of a declaratory judgment action with reference to its applicability to administrative matters. Where the action would result in a prejudging of issues that should be decided in the first instance by an administrative body, it should not lie. This is because, if it be otherwise, all decisions by the several agencies could be bypassed, and the district court would be administering the activities of the executive branch of the government. *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); and *City of Cheyenne v. Sims*, Wyo., 521 P.2d 1347 (1974). This restriction on the scope of declaratory judgments is akin to the requirement that administrative remedies must be exhausted before judicial relief is available.

Accordingly, where the relief desired is in the nature of a substitution of judicial decision for that of the agency on issues pertaining to the administration of the subject matter for which the agency was created, the action should not be entertained. If, however, such desired relief concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be, based, the action should be entertained.

This is no more than that obviously and plainly provided for in the language of the Uniform Declaratory Judgments Act.

█ In this case, the jurisdiction and extent of the powers of the two agencies are questioned as they relate to each other. The court is not requested to make administrative decisions necessary to carry out the purpose of the respective agencies. The issues presented to the court have to do with the *legal* relations of the parties. Appellants are entitled to know with which of the agencies they are to consult and negotiate on matters of important business activities. They are entitled to know under which agency regulations they must operate. The declaratory judgment action properly lies to "settle and afford relief" with reference to these "rights, status and other legal relations."

Inasmuch as a declaratory judgment action is available to appellees as an independent action, separate and apart from a petition for review, the time in which a petition for review must be filed is immaterial.

Reversed and remanded with directions to deny the amended motion to dismiss.

ROSE, Chief Justice, dissenting and joining in the dissent of THOMAS, Justice.

I join in the dissent of Justice Thomas which, for me, contains just one more cogent reason why the appeal should not be settled in accord with the majority opinion. I dissent on the additional grounds that I believe the majority has extended the scope of the declaratory-judgment remedy beyond that which is contemplated by law. While agreeing with that portion of the majority opinion which holds sovereign immunity to be inapplicable, I would hold that the trial judge correctly decided that the late filing of appellant's [1] declaratory judgment action dictated dismissal because the court was then without jurisdiction to entertain appellant's challenge to the Department of Environmental Quality (DEQ) regulation.

As a third reason for supporting the trial court's decision, I would have gone on to hold that, under the facts of record, there is no justiciable issue upon which a declaratory judgment could be rendered in this case.

I would have affirmed.

The Declaratory-Judgment Question

The appellants argue that the district court erred in holding that—under the facts of this case—declaratory relief is not available. I would have held that declaratory relief is available in other related circumstances but not under the facts of this case.

The rules in issue here were promulgated by DEQ and are alleged to affect the rights of Rocky Mountain and other appellants. The regulation which appellants question became effective September 4, 1980, and provides in pertinent part:

"Section 3. *Applicability; General.*

"a. These regulations shall apply to any discharge to the subsurface including the vadose zone which could render any groundwater of the State unsuitable or degrade it for all uses for which it was suitable prior to discharge.

"b. A permit for a discharge shall not be required if the discharge is part of a facility for which an application has been made to the Division for a Permit to Construct, Install or Modify Public Water Supplies and Wastewater Facilities.

"c. Discharges, for the purpose of these regulations, are described and identified as:

"(1) Discharges of commercial, municipal and industrial wastes, which include but are not limited to:

\* \* \* \* \* \*

"(d) Oil field wastes including water produced with oil and gas;"

Appellants further charge that Section 4 of Chapter IX of these Rules and Regulations set out terms and conditions under which all new surface discharges of oil-field wastes, including water produced with oil and gas, would be allowed by the Department but that subsurface discharges would be prohibited unless permits were obtained pursuant to DEQ rules and regulations.

1. I will sometimes refer to the appellants as "Rocky Mountain" in this dissenting opinion.

DEQ did exclude from the operation of such section certain discharges associated with described drilling operations as well as certain discharges which are associated with enhanced recovery operations for oil and gas. The regulation did not, however, exclude from its permit requirements the underground injection and/or disposal of salt water, nonpotable water and other oil-field wastes produced in association with oil and gas through wells used to facilitate the production of oil and gas.

Rocky Mountain says that the authority to regulate all phases of the drilling and operation of oil and gas wells and disposal wells in connection with oil and gas production operations is vested exclusively with the Wyoming Oil and Gas Conservation Commission, by authority of § 30–5–104, W.S.1977. In this respect, it is urged that the relevant statutory language provides as follows:

"(d) The Commission has authority:

\* \* \* \* \* \*

"(ii) To regulate, for conservation purposes:

\* \* \* \* \* \*

"(D) Disposal of salt water, nonpotable water, and oil-field wastes;"

Rocky Mountain further alleges that § 35–11–103(c), W.S.1977 excludes from the regulatory jurisdiction of DEQ the authority to require permits and regulate the operation of wells employed for the underground injection and disposal of water, gas or other materials derived in association with oil or gas production. This authority, says Rocky Mountain, lies exclusively with the Wyoming Oil and Gas Conservation Commission. This statute provides:

"(i) 'Pollution' means contamination or other alteration of the physical, chemical or biological properties of any waters of the state, including change in temperature, taste, color, turbidity or odor of the waters or any discharge of any acid or toxic materials, chemical or chemical compound, whether it be liquid, gaseous, solid, radioactive or other substance, including wastes, into any waters of the state which creates a nuisance or renders any waters harmful, detrimental or injurious to public health, safety or welfare, to domestic, commercial, industrial, agricultural, recreational or other legitimate beneficial uses, or to livestock, wildlife or aquatic life, or which degrades the water for its intended use, or adversely affects the environment. *This term does not mean water, gas or other material which is injected into a well to facilitate production of oil, or gas or water, derived in association with oil or gas production and disposed of in a well,* if the well used either to facilitate production or for disposal purposes is approved by authority of the state, and if the state determines that such injection or disposal well will not result in the degradation of ground or surface or water resources;" (Emphasis added.)

Section 9–4–114(a), W.S.1977, points the way for a "person" affected by a rule promulgated by an agency to appeal to a district court for review. That statute provides:

"(a) Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common-law provision precluding or limiting judicial review, *any person aggrieved or adversely affected in fact by a final decision of an agency* in a contested case, *or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court* for the county in which such administrative action or inaction was taken, or in which any real property affected by such administrative action or inaction is located, or in the event no real property is involved, in the district court for the county in which the party aggrieved or adversely affected by the administrative action or inaction resides or has its principal place of business. *The procedure to be followed in such proceeding before the district court shall be in accordance with rules heretofore or hereinafter adopted by the Wyoming supreme court."* (Emphasis added.)

And section (c) of § 9–4–114, W.S.1977, 1981 Cumm.Supp. provides:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations, or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

As indicated in subsection (a) above, the procedures to be followed in pursuing a petition for review to the district court are prescribed by the rules of the Wyoming Supreme Court. The rule for reviewing an agency ruling through the petition-for-review procedure is contemplated by Rule 12, W.R.A.P. In a noncontested case (which this is), appellees urge the applicability of Rule 12.04, W.R.A.P., which provides:

"In a contested case, or *in a noncontested case where a statute places a time limit on appeal*, the petition for review shall be filed within thirty (30) days after written, certified notice to all parties of the final decision of the agency or denial of the petition for a rehearing, * * *." (Emphasis added.)

The appellees point out that Wyoming has a statute which sets the time for appeal— namely, § 35–11–1001, W.S.1977. This statute provides:

"Judicial review.

"(a) *Any aggrieved party under this act,* any person who filed a complaint on which a hearing was denied, and any person who has been denied a variance or permit under this act, *may obtain judicial review by filing a petition for review within thirty (30) days after entry of the order* or other final action complained of pursuant to the provisions of the Wyoming Administrative Procedure Act [§§ 9–4–101 to 9–4–115]." (Emphasis added.)

Appellees argue that, under this statute, if the appellants were aggrieved by rules promulgated by authority of the Wyoming Environmental Quality Act they were compelled to bring their petition for review or their declaratory-judgment action within the 30-day period contemplated by the statute—which they failed to do. The argument is that, in consequence of this failure, the court did not longer possess jurisdiction—either to entertain a petition for review or for any other action, including a declaratory-judgment action.

In response, appellants urge that Rule 12, W.R.A.P. and its subdivisions are applicable only to petitions for review, that theirs is not a petition for review but an action for declaratory judgment, and that Rule 12.12, W.R.A.P. contemplates this kind of independent relief in the circumstances of this case. Rule 12.12 provides:

"*The relief, review, or redress available in suits for* injunction against agency action or enforcement thereof, in actions for recovery of money, in actions for *a declaratory judgment of rights, status, or legal relations based on administrative action or inaction,* in actions for mandamus to compel administrative action, and in applications for writs of certiorari and prohibition to review or prevent administrative action *shall be available by independent action notwithstanding any petition for review filed.*" (Emphasis added.)

Appellants further contend that § 35–11–1001, W.S.1977 is inapplicable to the matter at hand because it also is concerned only with an appeal by way of judicial review.

Keeping in mind that the petition-for-review jurisdictional time limits have not been complied with, I perceive the central question to be this:

> Does Rule 12.12 give the appellants an independent right of action for declaratory judgment even in those circumstances where the court no longer retains jurisdiction to entertain a petition for review?

In answering appellants' claims, the State urges that, although Rule 12.12 allows for declaratory relief, the provisions must be read together with all of the Rule 12 provisions which implement the procedures for reviewing-agency action provided by § 9–4–114, supra. When this is done, the State argues, the 30-day time limitation noted previously in § 35–11–1001 applies under Rule 12.04, and the appellants' action was, therefore, untimely—which is to say that the trial court did not have jurisdiction when the declaratory-judgment action was filed.

As noted above, the legislature, in § 9–4–114, granted individuals access to the courts in order to review either agency rules or adjudication which affected them. The statutory requirement for obtaining judicial review of agency action is that the party challenging the agency action or inaction be aggrieved by the adjudication or injured in fact by a rule. Pursuant to the provisions of § 9–4–114(a), this court promulgated the rules of procedure for obtaining judicial review of agency action, which procedure is now compiled in Rule 12 W.R.A.P.[2] Rule 12.01, W.R.A.P. provides the general standard applicable for obtaining judicial review:

> "To the extent that judicial review of administrative action by a district court is available, any person who is aggrieved or adversely affected in fact by any other agency action or inaction, or who is ad-

versely affected in fact by a rule adopted by agency, may obtain such review as provided in this rule."

Thus, under the appropriate procedures, the challenging party must not only show that he is aggrieved but also that his filing of an action seeking review is timely under the provisions of Rule 12.04 W.R.A.P.

The provision for declaratory relief in Rule 12.12 cannot and does not have the effect of conferring jurisdiction which is in addition to that provided in the rules and statutes pertaining to petitions for review. We said as much in *Retail Clerks Local 187 v. University of Wyoming*, Wyo., 531 P.2d 884 (1975), when, in discussing the consent-to-suit aspect of the immunity issue, we said:

> "The Federal Declaratory Judgments Act has been held not to constitute consent to suit against the United States but only that *it gives an additional remedy when such jurisdiction already exists*, 22 Am. Jur.2d Declaratory Judgments, § 85, p. 948. This is also true of the states where the Uniform Declaratory Judgments Act has been adopted, *American Federation of Labor v. Mann*, Tex.Civ.App., 188 S.W.2d 276, 279, with much authority therein cited. Also see *Empire Trust Co. v. Board of Commerce and Navigation*, 124 N.J.L. 406, 11 A.2d 752, 754; *Davis v. State*, 183 Md. 385, 37 A.2d 880, 885; *Purity Oats Co. v. State*, 125 Kan. 558, 264 P. 740; Borchard, Declaratory Judgments, p. 374 (2d Ed.); 1 Anderson, Actions for Declaratory Judgments, § 179, p. 346 (2d Ed.)." (Emphasis added.) *Id.* at 886.

In *Retail Clerks Local 187 v. University of Wyoming*, supra, the jurisdictional issue was consent. The question was: Where the court was otherwise without jurisdiction (consent), could jurisdiction (consent) be invoked by authority of a statute which authorizes declaratory-relief judgment? We said no. We said, in essence, that if there had been jurisdiction to sue the State in the

---

**2.** The procedures were formerly found in Rule 72.1 W.R.C.P. See: *Bruegman v. Johnson*

*Ranches, Inc.*, Wyo., 520 P.2d 489 (1974).

first instance (consent), declaratory judgment could be utilized for whatever advantage the declaratory-judgment statute might serve—but, it could not confer jurisdiction—i.e., grant consent to sue the State—where otherwise it did not exist.

It is said in 22 Am.Jur.2d, p. 936, Declaratory Judgments § 75 "Jurisdiction—of state courts.":

"Declaratory judgment statutes are not jurisdictional and do not create or grant jurisdiction where it does not otherwise exist, * * *." Citing *Conley v. Union County People's Utility Dist.*, 182 Or. 568, 187 P.2d 150; *Knodell v. Nelson*, 76 S.D. 43, 71 N.W.2d 737; *Malone v. Houston*, Tex.Civ.App., 278 S.W.2d 204, error ref. n. r. e.; *Borden Co. v. McDowell*, 8 Wis.2d 246, 99 N.W.2d 146.

In actions for declaratory judgments, Anderson, Vol. 1, Jurisdiction, § 106, p. 173, the author says:

"The declaratory judgment statute did not in any way alter the regular jurisdiction of the courts by conferring upon the courts the procedural power enumerated therein, to render declaratory judgments."

There can be no doubt but that the timely filing of a suit seeking review of administrative action is jurisdictional. *Department of Revenue & Taxation v. Irvine*, Wyo., 589 P.2d 1295 (1979); *Snell v. Ruppert*, Wyo., 541 P.2d 1042 (1975). Here, the appellants are requesting that we construe Rule 12.12 to allow them to bring a declaratory-judgment action at any time for purposes of reviewing the challenged regulation, even though the jurisdictional requirement created by Rule 12.04 and § 35–11–1001 has not been satisfied. This is in effect what the majority opinion allows—but I take issue with this resolution of the question. The only possible construction which I can give to Rule 12.12 is to say that the availability of declaratory relief to review administrative action is dependent on the timely filing of the action. All Rule 12.12 provides is that a litigant will be permitted to substitute the filing of a petition for review with

an independent action of the sort listed in the rule. This conclusion is further supported by the first sentence of § 1–37–102 W.S.1977 where it is stated:

"Courts of record *within their respective jurisdictions* * * *." (Emphasis added.)

For me, this language contemplates that a party must comply with jurisdictional requirements before any question concerning the propriety of granting declaratory relief can be considered.

We have held before that our rules of procedure, enacted under the authority conferred by § 9–4–114, cannot enlarge our jurisdiction, nor can such authority modify or repeal the scope of review provided by the legislature. *Tri-County Electric Ass'n, Inc. v. City of Gillette*, Wyo., 525 P.2d 3 (1974); *Johnson v. Schrader*, Wyo., 507 P.2d 814 (1973). Since the jurisdiction of the district court, in this case, was dependent on the timely filing of the appeal, and since § 1–37–103 does not confer jurisdiction on the court by itself, the appellants' failure to seek relief within 30 days of the final agency action required dismissal of their complaint which was filed some 40 days late. It is interesting to note that the majority recognize that it is important to consider the fact that here the district court was acting as an appellate court, yet the opinion ignores the scope of the district court's appellate jurisdiction as it relates to review of DEQ action or inaction. This, for me, is an essential flaw in the majority's approach.

I am aware of various holdings in other jurisdictions which seem to allow the use of declaratory-judgment actions to review administrative rules and regulations not yet applied by the promulgating agency. See: *Homestake Mining v. Board of Environmental Protection*, S.D., 289 N.W.2d 561 (1980); *Consolidated Cigar v. Department of Public Health*, 372 Mass. 844, 364 N.E.2d 1202 (1977); *Landfill, Inc. v. Pollution Control Board*, 74 Ill.2d 541, 25 Ill.Dec. 602, 387 N.E.2d 258 (1978); *Rankin-Thoman, Inc. v. Caldwell*, 42 Ohio St.2d 436, 329 N.E.2d 686

(1975).[3] However, in most instances where declaratory relief was held to be available, the applicable statutory-review provisions specifically directed the use of declaratory judgments as a means for reviewing-agency regulations.[4] In some of the other cases listed above, the courts were concerned that failure to allow the requested relief would have precluded review altogether. In *CF&I Steel v. Colorado Air Pollution Control Commission*, Colo., 610 P.2d 85 (1980), the Colorado Supreme Court held that declaratory relief was available to challenge an agency regulation yet to be applied, since the threat of application was sufficient to give the parties standing under the Colorado Administrative Procedure Act.[5]

I would emphasize that I do not suggest that declaratory relief is never available to challenge an agency regulation, since Rule 12.12 specifically permits it. Instead, I would hold that, as a matter of law, the challenging party must timely file his action below if declaratory-judgment relief is to be sought in lieu of a petition for review.

Additionally, I do not conclude that declaratory relief is even now denied to the appellants. I am simply saying that, in these circumstances, under § 9–4–114, review cannot now become available until the challenged regulation is applied to the appellants, at which time the appellants may utilize whatever defenses are available under the law. Once again I reiterate that my conclusions on this issue are addressed to the failure of appellants to institute a timely review proceeding.

### Justiciable Issue?

In addition to my conclusion that the district court was correct in dismissing this action for lack of jurisdiction, I would also observe that I question whether the circumstances of this case structure such a justiciable controversy as is necessary for the granting of declaratory relief. I say this because, even though declaratory relief is available as an alternative remedy for review of administrative action where the court has jurisdiction in the first instance, I doubt that the simple existence of an agency rule is, in and of itself, such a circumstance as will warrant the granting of the declaratory-judgment remedy. It seems to me that a challenging party must at least be able to point to an actual threatened application of a rule together with a probable adverse effect before a justiciable controversy will be said to have been fashioned. Thus, not only did the appellants fail to exhaust an available administrative remedy (as per the Thomas dissent)—fail to establish jurisdiction in the trial court, but I also conclude that the circumstances of this case were not at that stage where declaratory relief could have been granted, because the record does not disclose a threatened application of the rule in a manner which would adversely affect the appellants. *Anderson v. Wyoming Development Co.*, 60 Wyo. 417, 154 P.2d 318 (1944); *Mountain West Farm Bureau Mutual Insurance v. Hallmark Insurance*, Wyo., 561 P.2d 706 (1977); *Brimmer v. Thomson*, Wyo., 521 P.2d 574 (1974). For all we know, DEQ might never invoke the rule against the appellants, or, if it did, the appellants might find it impossible to show that they were harmed in such a degree as a court would find sufficient to call for declaratory relief.

In conclusion, I would have held that the appellants' failure to file their action within the 30-day requirement of § 35–11–1001, precluded review of the questioned regulation under any method suggested in Rule 12.12, W.R.A.P., that they did not exhaust their administrative remedy, and that the

---

**3.** For a contra holding precluding the use of declaratory relief to review an agency regulation see: *Appeal of Buckeye Power, Inc., et al.*, 42 Ohio St.2d 508, 330 N.E.2d 430 (1975).

**4.** The Model Administrative Procedure Act, § 6, contains such a provision. For a discussion of this see: Davis, An Administrative Procedure Act for Arizona, 2 Ariz.L.Rev. 17, 26 (Summ.1960); Stason, The Model State Administrative Procedure Act, 33 Iowa L.Rev. 196 (1948). Wyoming did not choose to take such a course in enacting our version of the Administrative Procedure Act.

**5.** The Colorado Supreme Court was not concerned with the question of timely filing, where here that is the principal point at issue.

facts of the case do not present a justiciable controversy. In my opinion the trial judge acted properly in dismissing this action.

I would have affirmed.

THOMAS, Justice, dissenting, with whom ROSE, Chief Justice, joins.

I must dissent from the majority opinion of my colleagues in this case. I am disposed to agree with much of what is in the majority opinion, but I depart quite sharply on the question of the availability of relief pursuant to the Uniform Declaratory Judgments Act, §§ 1–37–101, et seq., W.S.1977. I also agree with much of what is said in the dissenting opinion of Chief Justice Rose, but again the ground for disposition which I would espouse is different from that which he proposes. I would, in any event, not reach the question of sovereign immunity because the remedy of a declaratory judgment is not available to the appellants, and that is a jurisdictional proposition which inhibits the consideration of any other issues.

The ground for disposition of this case which I would espouse is different from that proposed in the majority opinion, that proposed in the dissenting opinion of Chief Justice Rose, and that espoused by the appellees in their legal position. Furthermore, it is different from that relied upon by the district court, although the law is well established that we are permitted to affirm the district court on any proper ground. *Agar v. Kysar*, Wyo., 628 P.2d 1350 (1981); *Wightman v. American National Bank of Riverton*, Wyo., 610 P.2d 1001 (1980), and cases therein cited. I cannot overlook the obvious simply because it is not perceived as obvious by others. I would hold that the relief of a declaratory judgment is not available in this instance because of the failure of the appellants to exhaust an available administrative remedy. It is conceded that the appellants in the district court sought injunctive relief as well, but the essence of this controversy is an adjudication with respect to the application of agency rules, and the availability of a remedy under the Uniform Declaratory

Judgments Act is the focus of the debate of the parties.

In *City of Cheyenne v. Sims*, Wyo., 521 P.2d 1347 (1974), this court said at 1350:

"Declaratory judgment should not be used to usurp or replace specific administrative relief, particularly when the initial decision is committed to an administrative body. [Footnote omitted.] * * *"

Section 9–4–106, W.S.1977, provides as follows:

"Any interested person may petition an agency requesting the promulgation, amendment or repeal of any rule and may accompany his petition with relevant data, views and arguments. Each agency may prescribe by rule the form of such petition and the procedure for its submission, consideration and disposition. Upon submission of such a petition, the agency as soon as practicable either shall deny the petition in writing (stating its reasons for the denials) or initiate rulemaking proceedings in accordance with section 3 [§ 9–4–103]. The action of the agency in denying a petition shall be final and not subject to review."

The language of this statute aptly covers the relief sought by the appellants in their attempted civil action. I can see no alternative but to apply the rule of *City of Cheyenne v. Sims*, supra, to this situation and to hold that no action for declaratory judgment by these appellants will lie in the absence of an allegation that they have pursued the relief provided in § 9–4–106, W.S.1977, and that relief has been denied.

I hasten to add that I have the same reservations as Chief Justice Rose has stated to the existence of a justiciable controversy in any event. The pleading of the appellants states a claim which assumes that rules, which arguably could be interpreted and applied in a different manner, are to be interpreted and applied in accordance with the views of the appellants. Premising declaratory judgment jurisdiction upon such a position goes one step beyond the situation which was presented in *Aetna Casualty and Surety Company v. Langdon*, Wyo., 624 P.2d 240 (1981), in

which instance we refused to recognize a justiciable controversy.

If relief pursuant to the Uniform Declaratory Judgments Act can be obtained in circumstances such as those presented in this case, I am convinced that we must candidly recognize alternative methods for reviewing administrative rulemaking. If that is so then the 30-day limit for administrative review provided in Rule 12.04, W.R. A.P., and by the statute in this instance, § 35–11–1001, W.S.1977, becomes meaningless. The legislature and this court should not be presumed to have adopted a meaningless requirement for judicial review of the rulemaking process. Consequently the availability of relief under the Uniform Declaratory Judgments Act must depend upon allegations of a greater impact upon the party seeking relief than simply that it is a "person affected in fact by a rule adopted by an agency," which is the premise for judicial review pursuant to § 9–4–114(a), W.S.1977, in a rulemaking procedure. I cannot discern any allegations of greater impact by the appellants in this case.

In my view the primary premise for the disposition proposed by the majority of this court is that we choose to consider this case. I find in such a position a danger of the judicial branch of government intruding in an unconstitutional way upon those matters which have been by law committed to the executive branch of government. The development of rules relating to water quality in this state has been committed to the executive branch of government by the legislature. If those rules are improper, then good jurisprudential practice requires the courts to refer those who are dissatisfied to the remedy provided by § 9–4–106, W.S. 1977, before any consideration is given to the availability of relief pursuant to the Uniform Declaratory Judgments Act.

I would affirm the judgment of the district court in this case for the reasons set forth above.